45 Cal.Rptr.3d 888 (2006)
141 Cal.App.4th 360
CALIFORNIA ASSOCIATION OF PSES et al., Plaintiffs and Appellants,
v.
CALIFORNIA DEPARTMENT OF EDUCATION et al., Defendants and Respondents.
No. B181843.
Court of Appeal, Second District, Division Five.
July 13, 2006.
*889 Newman, Aaronson, Vanaman and Robert M. Myers, Sherman Oaks; Law Offices of Carol A. Sobel and Carol Ann Sobel Plaintiffs and Appellants.
Bill Lockyer, Attorney General, James M. Humes, Chief Assistant Attorney General, James S. Schiavenza, Assistant Attorney General, Marsha A. Miller, and Carol Ann Boyd, Deputy Attorneys General, for Plaintiff and Respondent.
TURNER, P.J.

I. INTRODUCTION
Plaintiffs, the California Association of Private Special Education Schools (the association) *890 and the Poseidon School (the school), appeal from a judgment of dismissal after the demurrers of defendants, the California Department of Education (the department) and Superintendent of Public Instruction Jack O'Connell, were sustained without leave to amend. Plaintiffs contend the Superintendent of Public Instruction (the superintendent) may not suspend or revoke the certification of a nonpublic, nonsectarian school providing educational services to disabled children without providing a hearing with proper notice before any adverse administrative action is taken. We hold Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 on their face do not violate plaintiffs' due process rights. Further, the second amended complaint does not sufficiently specifically allege the existence of an actual present controversy to permit resolution of an as applied challenge to Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068. Finally, we conclude the foregoing statute and regulation are not subject to the requirements for emergency administrative decisions specified in Government Code section 11460.10 et seq.

II. PROCEDURAL BACKGROUND
The initial complaint was filed on May 2, 2002. The department and various defendants, which included the former Superintendent of Public Instruction, Delaine Eastin, answered the original complaint on September 16, 2002. Superintendent O'Connell was not named in the initial complaint. On April 30, 2004, various defendants, including the department and former Superintendent Eastin, moved for judgment on the pleadings as to the fourth, seventh, and eighth causes of action. Before the trial court ruled on the judgment on the pleadings motion, the parties settled the seventh and eighth causes of action. As to the fourth cause of action, the judgment on the pleadings motion was granted with 10 days leave to amend.
On July 8, 2004, the first amended complaint was filed. Various defendant were named, including the department and Superintendent O'Connell. However, on August 10, 2004, plaintiffs filed a dismissal request as to all of the defendants, except for the department and Superintendent O'Connell. Also, plaintiffs dismissed the second, third, seventh, and eighth causes of action. On August 12, 2004, defendants demurred to the first amended complaint. On September 28, 2004, the demurrer was sustained with leave to amend. On October 8, 2004, plaintiffs filed the second amended complaint. On November 12, 2004, defendants demurred to the second amended complaint. Also, defendants moved to strike portions of the second amended complaint. On December 14, 2004, the demurrer was sustained without leave to amend and the motion to strike was placed off calendar. On January 21, 2005, a judgment of dismissal was entered. On March 10, 2005, plaintiffs filed a notice of appeal.

III. SECOND AMENDED COMPLAINT ALLEGATIONS
The second amended complaint sought injunctive and declaratory relief. The association is a nonprofit corporation that represents 182 schools which have been certified by the department. Member schools have had their "certifications" suspended or revoked without prior notice or hearing. The school was certified by the department as "a nonpublic, nonsectarian school" and is an association member. The school's certification was scheduled to expire in December 2004. The school provides *891 education for average to above average students who have problems in other learning environments. The school has 40 to 45 students most of whom are seriously emotionally disturbed or present misbehavior problems. The school has been successful and its innovative programs have been "widely adopted" in both public and private schools. According to the second amended complaint, the school is "adversely affected" by the department's practices. The school had problems with the department in connection with certification issues in the past. The department had changed the school's certification in the past without prior notice or an opportunity for hearing. But the second amended complaint alleged that the school was uncertain of its rights in the event certification issues arose in the future.
The second amended complaint alleged that in 1996 Education Code sections 56366, subdivision (e) and 56366.1, subdivision (m) were adopted and required that the department promulgate regulations concerning certification of nonpublic, nonsectarian schools. The department adopted regulations which were filed with the Secretary of State on September 1, 1999. Nonpublic, nonsectarian schools are statutorily recognized in Education Code section 56361 as one component in the continuum of educational services that must be made available to disabled children. Education Code section 56365, subdivision (a) authorizes public education agencies to contract with nonpublic, nonsectarian schools to provide special education facilities and instruction to children with exceptional needs. This may be done when "no appropriate public education program" is available and the nonpublic, nonsectarian school is certified by the department. Pursuant to California Code of Regulations, title 5, section 3067, subdivision (c), there are three classes of certification of nonpublic, nonsectarian schools: certified; conditionally certified; or suspended. Section 56366, subdivision (e) provides that conditional certification is available when an application for certification is initially acted upon by the department. Also, a nonpublic, nonsectarian school may be conditionally certified when the department fails to act on a certification application within 120 days of its filing. (Ed.Code, § 56366.1, subd. (f).)
Once a nonpublic, nonsectarian school is certified, it may lose its certification only in the case of "good cause" as specified in Education Code section 56366.4. If the superintendent "suspends" the certification, the school may continue to operate but may not accept new students. By contrast, a revocation order: prevents nonpublic, nonsectarian schools from entering into contracts with public agencies; bars the acceptance of new students; and precludes the nonpublic, nonsectarian school from continuing to serve children placed by public agencies.
Education Code section 56366.6 provides that a petition to review the superintendent's decision may be filed within 20 working days following a nonpublic, nonsectarian school's receipt of a suspension or revocation notice. California Code of Regulations, title 5, section 3068 states the Office of Administrative Hearings of the Department of General Services provides three possible types of review of a suspension or revocation order: a written review of documents provided by the nonpublic, nonsectarian school and the department; a written review with oral argument; or an oral hearing with testimony and cross-examination of witnesses. Within 30 days after the submission of all materials, the Office of Administrative Hearings issues a final administrative decision.
According to the second amended complaint, the policy of the department and *892 the superintendent is as follows: "Defendants have implemented and applied the statutory and regulatory scheme to provide that the superintendent's decision is immediately effective and that the notice and an opportunity for a hearing occurs only thereafter. Therefore, in suspending or revoking certifications, [the department and Superintendent O'Connell] do not provide notice and an opportunity for hearing prior to the effective date of the suspension or revocation. Instead, they provide notice that a suspension or revocation has already been implemented and they provide the nonpublic school with the opportunity to request a post-suspension or post-revocation hearing. As a result of these practices, nonpublic schools have no opportunity to contest the factual or legal basis for a suspension or revocation prior to the suspension or revocation taking effect."
Plaintiffs allege that the department and Superintendent O'Connell are not statutorily authorized to enter suspension or revocation orders without providing a pre-suspension or revocation administrative action hearing. Government Code section 11460.10 et seq. authorizes state agencies to adopt emergency decision procedures. However, the allegedly unlawful practice of suspending or revoking nonpublic school certification does not comply with Government Code section 11460.10 et seq. requirements for emergency decision procedures by state agencies. Further, plaintiffs allege that the foregoing procedures violated their United States Fourteenth Amendment and California Constitution article I, section 7, subdivision (a) due process rights because: nonpublic schools have a liberty interest in the department's certifications; the department and Superintendent O'Connell "regularly suspend and revoke the certification status of nonpublic schools without providing notice or an opportunity for a hearing"; and the post revocation or suspension hearing is inadequate to protect against "serious economic damage" occurring during the hearing process. Further, according to plaintiffs, most suspensions last for only 30 days. By the time the hearing process is finished, the suspension will already have been completed with resultant economic loss. In the case of a revocation, by the time the hearing was completed, immediate closure would occur, staff would be terminated, and the nonpublic school's business would be destroyed. As a result, in the fourth cause of action, plaintiffs sought declaratory and injunctive relief which would bar the department and Superintendent O'Connell from suspending or revoking certifications without a hearing. Plaintiffs also sought an award of attorney fees pursuant to Code of Civil Procedure section 1021.5.

IV. DISCUSSION

A. Standard Of Review
This is an appeal from a dismissal following the sustaining of a demurrer without leave to amend. Our Supreme Court has set forth the standard of review we must apply as follows: "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed `if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion *893 to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317; accord, Zelig v. County of Los Angeles (2002) 27 Cal.4th 1112, 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171.)

B. The Post-Suspension Or Revocation Procedure Which Involves The Safety And Well Being Of Disabled Children Does Not Violate State Or Federal Due Process Principles

1. The method by which a nonpublic, nonsectarian school is certified and the certification is suspended or revoked.
Plaintiffs argue a nonpublic, nonsectarian school may not have its certification suspended or revoked by the superintendent without a prior hearing and notice of the basis of the potential adverse administrative action. This contention is commonly referred to as the claim that an aggrieved license, permit, or other property interest holder is entitled to "predeprivation" notice and a hearing before an adverse administrative action is taken. (See Gilbert v. City of Sunnyvale (2005) 130 Cal.App.4th 1264, 1276, 31 Cal.Rptr.3d 297; Sahlolbei v. Providence Healthcare, Inc. (2003) 112 Cal.App.4th 1137, 1155, 5 Cal.Rptr.3d 598.) At issue in this case is the manner in which certification of a nonpublic, nonsectarian school is suspended or revoked. Both federal and state law guarantee all disabled children a free, appropriate public education that is designed to meet their unique needs. (34 C.F.R., §§ 300.1, subd. (a), 300.401; Ed.Code, § 56000.) As part of this guarantee of a free appropriate public education for disabled children, a nonpublic, nonsectarian school provides special education services under a master contract with a local educational agency. Among other things, the master contract must contain: provisions for the administration of the contract including student to pupil ratios, transportation, and recordkeeping and documentation (Ed.Code, § 56366, subds. (a)(1), (b)); an "individual services agreement" which will insure compliance with each student's individualized education plan (Ed.Code, § 56366, subd. (a)(2)(A)); methods for evaluating student progress including determining whether to return the child to public schools (Ed.Code, § 56366, subd. (a)(2)(B)); provisions for payment of warrants (Ed.Code, § 56366, subd. (c)(1), (2)); and various provisions insuring compliance with other state laws including documentation of attendance. (Ed.Code, § 56366, subd. (a)(2)(C).) Unless the nonpublic, nonsectarian school has been "certified as meeting those standards relating to the required special education and specified related services and facilities for individuals with exceptional needs," no master contract may be negotiated by the local educational agency. No master contract may be exceed 18 months in duration. (Ed. Code, § 56366, subd. (d).) As noted, Education Code section 56366, subdivision (d) refers to children with exceptional needs. Under California law, a youngster with an individualized education program is also referred to as a child with exceptional needs. (Ed.Code, § 56026, subd. (a).) For ease of reference, we will refer to an exceptional needs child as one who is disabled; the term used under federal law.
A nonpublic, nonsectarian school is certified by the superintendent. The lengthy certification process is detailed in Education Code section 56366.1. Included in the certification process are: preparation of an application which includes an under oath showing that the facility complies with all relevant state and federal laws *894 (Ed.Code, § 56366.1, subd. (a)); proof of notification of the application to the local educational agency; evidence the representatives of the local educational agency have had the opportunity to review the application (Ed.Code, § 56366.1, subd. (b)(1)); onsite review of the facility by the superintendent (Ed.Code, § 56366.1, subd. (e)); and time frames for completing the certification process. (Ed.Code, § 56366.1, subd. (f).) In order to secure certification, all staff must be properly credentialed or otherwise possess appropriate certificates or permits. (Ed.Code, § 56366.1, subd. (n)(1).) Each school must also provide written assurances that the facility complies with all applicable health and safety laws. (Ed.Code, § 56366.1, subd. (o).) The superintendent is required to annually review the certification of each nonpublic, nonsectarian school. (Ed.Code, § 56366.1, subd. (h).) Further, the superintendent is required to conduct monitoring of certified facilities on a three-year cycle. (Ed.Code, § 56366.1, subd. (j).) The superintendent is granted the authority under specified circumstances to conduct unannounced onsite inspections of nonpublic, nonsectarian schools which have received certification. (Ed.Code, § 56366.1, subd. (i).) Once certified, the nonpublic, nonsectarian school is entitled to receive federal funds.
At issue are the provisions of Education Code section 56366.6, subdivisions (a) and (b) which state: "Within 20 working days following the nonpublic, nonsectarian school's or agency's receipt of the notice of denial, revocation, or suspension of certification, the nonpublic, nonsectarian school or agency may file a written petition to request a review of the decision by the superintendent. The petition may include written arguments or a request to present an oral argument. [¶] (b) Within 30 working days after the receipt of the written petition, the superintendent or a designee shall review the decision and the applicant's petition and render a written, reasoned decision that shall be the final administrative decision. The designee of the superintendent shall be impartial, unbiased, and shall not have participated in the department decision to deny, revoke, or suspend the nonpublic, nonsectarian school or agency certification."
The regulations promulgated to implement the post suspension and revocation hearing process provide that the Office of Administrative Hearings handles appeals only after the superintendent issues a suspension or revocation. The hearing procedure is specified in California Code of Regulations, title 5, section 3068 which states in part: "(a) Within twenty (20) working days of receipt of notice, nonpublic schools or nonpublic agencies (appellant) may file a written petition (appeal), on forms provided by the Superintendent, to request a review of the decision to deny, suspend or revoke certification pursuant to Education Code Section 56366.6. [¶] (b) All appeals shall be mailed to the Office of Administrative Hearings, Department of General Services. [¶] (c) There shall be three options for appealing the denial, suspension or revocation of certification. The nonpublic school or nonpublic agency may request: [¶] (1) a written review of the decision to deny, suspend or revoke certification. The Office of Administrative Hearings shall analyze the documentation provided by the appellant and materials provided by the Department and render a decision; [¶] (2) a written review with an oral argument. The Office of Administrative Hearings shall analyze the documentation provided by the appellant and materials provided by the Department. The appellant shall also appear before a hearing officer, on a date scheduled by the Office of Administrative Hearings, to provide oral testimony in support of the appeal. The Department shall also attend the hearing and present testimony *895 to support the decision to deny, suspend or revoke certification. The hearing officer may ask questions of either party. All testimony shall be tape-recorded; or [¶] (3) an oral hearing. The appellant shall appear before a hearing officer, on a date scheduled by the Office of Administrative Hearings, to provide oral testimony in support of the appeal. The Department shall also attend the hearing and present testimony to support the decision to deny, suspend or revoke certification. The hearing officer shall provide the opportunity for both parties to review evidence, call witnesses and cross-examine witnesses. If the appellant fails to appear at the hearing, the petitioner waives the right to a future hearing, unless the hearing officer agrees to reschedule the hearing because of extenuating circumstances. [¶] (d) The Office of Administrative Hearings shall issue the decision, in writing, simultaneously to the appellant and to the Department within thirty (30) working days after receipt of all materials and evidence. This shall be the final administrative decision."
Plaintiffs argue that Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 permit us to construe the statutory and regulatory provisions to require a pre-adverse administrative action hearing. Plaintiffs rely on the following analysis in Ratliff v. Lampton (1948) 32 Cal.2d 226, 230, 195 P.2d 792, a driver's license revocation case, "We should not imply legislative intent to deprive a person of his license without a prior opportunity to be heard unless compelled to do so by the plain language of the statute, regardless of whether there is a right to an administrative review after revocation." In this case, the plain language of Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 specify the hearing is to occur after the superintendent suspends or revokes the certification. The presumption articulated in Ratliff does not warrant us holding that a nonpublic, nonsectarian school is entitled to a pre-suspension or revocation hearing.

2. Plaintiffs' facial challenge to the statute and the regulation
Plaintiffs assert a facial challenge to Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068. The Supreme Court explained a facial challenge thusly: "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. (Dillon v. Municipal Court (1971) 4 Cal.3d 860, 865, 94 Cal.Rptr. 777, 484 P.2d 945.) `"To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute.... Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions."' (Arcadia Unified School Dist. v. State Dept. of Education (1992) 2 Cal.4th 251, 267, 5 Cal.Rptr.2d 545, 825 P.2d 438, quoting Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 180-181, 172 Cal. Rptr. 487, 624 P.2d 1215.)" (Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1084, 40 Cal.Rptr.2d 402, 892 P.2d 1145.) Later, the Supreme Court qualified its analysis in Tobe as follows: "[A]lthough we may not invalidate a statute simply because in some future hypothetical situation constitutional problems may arise (Tobe v. City of Santa Ana, supra, 9 Cal.4th at p. 1084, 40 Cal. Rptr.2d 402, 892 P.2d 1145), neither may we ignore the actual standards contained *896 in a procedural scheme and uphold the law simply because in some hypothetical situation it might lead to a permissible result." (See California Teachers Ass'n v. State of California (1999) 20 Cal.4th 327, 347, 84 Cal.Rptr.2d 425, 975 P.2d 622.) Plaintiffs have a heavy burden of demonstrating that Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 are unconstitutional on their face. (Professional Engineers v. Department of Transportation (1997) 15 Cal.4th 543, 593, 63 Cal. Rptr.2d 467, 936 P.2d 473; Pacific Legal Foundation v. Brown, supra, 29 Cal.3d at p. 180, 172 Cal.Rptr. 487, 624 P.2d 1215.)
Plaintiffs argue Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 are violative of the Fourteenth Amendment due process clause.[1] The controlling test for evaluating the scope of a pre-adverse action federal due process hearing right in an administrative context is specified in Mathews v. Eldridge (1976) 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18: "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (See Coleman v. Department of Personnel Administration (1991) 52 Cal.3d 1102, 1118, 278 Cal.Rptr. 346, 805 P.2d 300.) In Cafeteria Workers v. McElroy (1961) 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230, the Supreme Court explained: "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . . [¶] . . . [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved as well as of the private interest that has been affected by governmental action." (Accord, Oberholzer v. Commission on Judicial Performance (1999) 20 Cal.4th 371, 391, 84 Cal. Rptr.2d 466, 975 P.2d 663.)
The United States Supreme Court has spoken directly, in the Fourteenth Amendment due process context, to a government entity's right to take adverse regulatory action and only provide notice and the option of a hearing after the suspension or revocation of a protectable interest. In Mathews v. Eldridge, supra, 424 U.S. at pages 332-349, 96 S.Ct. 893, the Supreme Court applied the foregoing three-step due process analysis and upheld an administrative procedure for terminating social security disability payments. That administrative procedure permitted a state agency to utilize a "`team'" consisting of a physician and a disability evaluator to review a social security aid recipient's mental or physical impairment. (Id. at pp. 336-337, 96 S.Ct. 893.) Once the local agency team concluded that the recipient had recovered, a recommendation was made to the Social Security Administration Bureau of Disability to terminate payments. Federal social security officials would then review the state team's disability benefits termination decision recommendation. The state team's termination decision was usually upheld by *897 the social security officials. Two months later, payment of the recipient's social security disability benefits would terminate. The recipient could pursue a series of administrative reviews. But prior to the decision to terminate disability payments, there was no right to an administrative hearing. The Supreme Court held, "We conclude that an evidentiary hearing is not required prior to the termination of disability benefits and that the present administrative procedures fully comport with due process." (Id. at p. 349, 96 S.Ct. 893; see McClelland v. Massinga (4th Cir.1986) 786 F.2d 1205, 1212.)
The United States Supreme Court applied the three-part Eldridge test in five other cases involving challenges to hearing procedures which were provided only after the government agencies took adverse administrative actions. In Dixon v. Love (1977) 431 U.S. 105, 114, 97 S.Ct. 1723, 52 L.Ed.2d 172, the Supreme Court upheld a state statute which suspended a driver's license when the driver incurred a specified number of convictions but offered not pre-suspension right to a hearing. Of consequence to the Supreme Court was the state's interest in "safety on the roads and highways, and in the prompt removal of a safety hazard" which warranted only a post suspension opportunity for a hearing. (Ibid.; see Bradshaw v. Park (1994) 29 Cal.App.4th 1267, 1278, 34 Cal.Rptr.2d 872.) In Mackey v. Montrym (1979) 443 U.S. 1, 17-18, 99 S.Ct. 2612, 61 L.Ed.2d 321, the Supreme Court upheld a state procedure permitting the summary revocation of the license of a driver who refused to take a alcohol test. The Supreme Court held the failure to provide a pre-suspension hearing was justified in part by governmental interest in protecting the public. In Federal Deposit Ins. Corp. v. Mallen (1988) 486 U.S. 230, 231-232, 108 S.Ct. 1780, 100 L.Ed.2d 265, the Supreme Court examined a statute which allowed the Federal Deposit Insurance Corporation to suspend an indicted official of a federally insured bank. The indicted official was not entitled to a pre-suspension hearing. Rather, the indicted official could request to appear before the agency to contest the suspension and was entitled to a hearing within 30 days. (Id. at p. 242, 108 S.Ct. 1780.) Further, the indicted official was to receive a decision within 60 days after the hearing. In other words, there was a potential 90-day delay in receiving a ruling after the hearing request was filed by the indicted bank official. Applying the Eldridge factors, the Supreme Court concluded, "We thus conclude that the 90-day period is not so long that it will always violate due process." (Id. at p. 243, 108 S.Ct. 1780.) In Lujan v. G & G Fire Sprinklers (2001) 532 U.S. 189, 191-192, 121 S.Ct. 1446, 149 L.Ed.2d 391, the Supreme Court upheld California Labor Code provisions which allowed a public entity to withhold moneys due a contractor in the face of violations of a prevailing wage law. No pre-withholding hearing was provided and the remedy of the aggrieved contractor was to pursue an civil suit against the public entity which withheld the moneys or, in the case of an aggrieved subcontractor, the contractor could also be sued. The Supreme Court held, "We hold that if California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process." (Id. at p. 197, 121 S.Ct. 1446.) In a similar vein, in City of Los Angeles v. David (2003) 538 U.S. 715, 717-718, 123 S.Ct. 1895, 155 L.Ed.2d 946, the Supreme Court upheld an ordinance that allowed 27 days to pass before a motorist could secure a hearing after his car was towed.
Application of the Eldridge factors to the present case demonstrates Education Code section 56366.6, subdivision (a) and *898 (b) and California Code of Regulations, title 5, section 3068 on their face do not violate a nonpublic, nonsectarian school's Fourteenth Amendment due process rights. As noted, the first Eldridge factor is an evaluation of the private interest affected by the governmental action. (City of Los Angeles v. David, supra, 538 U.S. at p. 717, 123 S.Ct. 1895; Mathews v. Eldridge, supra, 424 U.S. at p. 335, 96 S.Ct. 893.) We agree with plaintiffs that the private interest at issue, the financial stability of a nonpublic, nonsectarian school providing educational services to disabled children, is a serious matter.
The second Eldridge factor, "the risk" of erroneous decision making is no problem. In David, the Supreme Court held, "A 30-day delay in presenting evidence is unlikely to spawn significant factual errors." (City of Los Angeles v. David, supra, 538 U.S. at p. 718, 123 S.Ct. 1895.) Here, Education Code section 56366.6, subdivision (a) permits the nonpublic, nonsectarian school to file a petition before the Office of Administrative Hearings within 20 working days after the superintendent issues the suspension or revocation order. Within 30 working days after the nonpublic, nonsectarian school files its petition, the Office of Administrative Hearings must review the suspension or revocation. (Ed.Code § 56366.6, subd. (b).) California Code of Regulations, title 5, section 3068, subdivision (d) requires the Office of Administrative Hearings to issue a final administrative decision within 30 working days after the receipt of all materials from the superintendent and the nonpublic, nonsectarian school. These reasonably prompt time frames do not increase the risk of erroneous decision making; the second Eldridge factor.
The third Eldridge factor, the interest of the government, strongly militates in defendants' favor. This case involves disabled children. Defendants have a compelling interest in insuring that the schools which are charged with protecting disabled children are operated in a safe and lawful fashion. This is akin to the strong governmental interest identified in Federal Deposit Ins. Corp. v. Mallen, supra, 486 U.S. at page 243, 108 S.Ct. 1780 to justify a 90-day delay in providing a post suspension hearing to an indicted bank officialmaintaining confidence in our banking institutions. Thus, application of the Eldridge factors requires we uphold the challenged statute and regulation against a facial attack under the Fourteenth Amendment due process clause.
We realize the United States Supreme Court has in various circumstances expressed a preference for pre-administrative action hearings. (U.S. v. James Daniel Good Real Property (1993) 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 [real property forfeiture]; Fuentes v. Shevin (1972) 407 U.S. 67, 92-93, 92 S.Ct. 1983, 32 L.Ed.2d 556 [prejudgment replevin of household chattels].) Applying United States Supreme Court analysis, our Supreme Court has held that state employees are entitled to certain due process rights prior to being disciplined. (Skelly v. State Personnel Bd. (1975) 15 Cal.3d 194, 215, 124 Cal.Rptr. 14, 539 P.2d 774["[T]hese preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline"]; compare Barthuli v. Board of Trustees (1977) 19 Cal.3d 717, 722-723, 139 Cal.Rptr. 627, 566 P.2d 261 [Skelly procedural rights are inapplicable to government employees holding at will administrative positions].) But the United States Supreme Court has explained that the right to a pre-adverse administrative action hearing depends in material part on *899 the governmental interest at stake (the third part of the Eldridge analysis). (Mackey v. Montrym, supra, 443 U.S. at pp. 17-18, 99 S.Ct. 2612; Boddie v. Connecticut (1971) 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113; see Love v. City of Monterey (1995) 37 Cal.App.4th 562, 574, 43 Cal.Rptr.2d 911.) Here, the governmental interest at stake, the education and protection of disabled children, is the type of interest which when the Eldridge factors are applied, permits a suspension or revocation of a certification of a nonpublic, nonsectarian school without providing a hearing prior to the superintendent taking action.
The result is the same under the California Constitution. The test for evaluating due process rights under article I, section 7, subdivision (a) of the California Constitution[2] is as follows: "More specifically, `identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" (Van Atta v. Scott (1980) 27 Cal.3d 424, 434, 166 Cal.Rptr. 149, 613 P.2d 210 quoting from People v. Ramirez (1979) 25 Cal.3d 260, 269, 158 Cal.Rptr. 316, 599 P.2d 622; see Oberholzer v. Commission on Judicial Performance, supra, 20 Cal.4th at p. 391, 84 Cal.Rptr.2d 466, 975 P.2d 663; Rodriguez v. Department of Real Estate (1996) 51 Cal.App.4th 1289, 1297, 59 Cal.Rptr.2d 652.) As can be noted, there is nothing in the state constitutional test which warrants a different result from application of the Fourteenth Amendment due process clause. Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 provide a reasonably prompt method for evaluating a suspension or revocation in an area of overriding government interestthe protection of disabled children.

3. Plaintiffs' as applied challenge
Plaintiffs also attack Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 on an as applied basis. Our Supreme Court has explained the nature of an "as applied" challenge on a statute thusly: "An as applied challenge may seek (1) relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied, or (2) an injunction against future application of the statute or ordinance in the allegedly impermissible manner it is shown to have been applied in the past. It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. (See, e.g., Broadrick v. Oklahoma (1973) 413 U.S. 601, 615-616, 93 S.Ct. 2908, 37 L.Ed.2d *900 830; County of Nevada v. MacMillen (1974) 11 Cal.3d 662, 672, 114 Cal.Rptr. 345, 522 P.2d 1345; In re Marriage of Siller (1986) 187 Cal.App.3d 36, 49, 231 Cal.Rptr. 757.)" (Tobe v. City of Santa Ana, supra, 9 Cal.4th at pp. 1084, 40 Cal. Rptr.2d 402, 892 P.2d 1145.)
Defendants argue that plaintiffs have failed to plead sufficient facts to permit an as applied challenge to Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068. The gravamen of the second amended complaint is that plaintiffs seek to secure a declaration that Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 are unconstitutional and for the trial court to enter injunctive relief. We agree with defendants that plaintiffs have failed to plead with requisite specificity how the challenged provisions, which are lawful on their face, have been applied impermissibly in the past; i.e., the facts underlying an as applied challenge. Our Supreme Court has identified the pleading requirement for a declaratory relief claim thusly: "The requirement that plaintiffs seeking declaratory relief allege `the existence of an actual, present controversy' (5 Witkin, Cal. Procedure [(4th ed.1997)], Pleading, § 817, p. 273) would be illusory if a plaintiff could meet it simply by pointing to the very lawsuit in which he or she seeks that relief. Obviously, the requirement cannot be met in such a bootstrapping manner; `a request for declaratory relief will not create a cause of action that otherwise does not exist.' (Mallenbaum v. Adelphia Communications Corp. (E.D.Pa., Dec. 29, 1994, Civ. A No. 93-7027) 1994 WL 724981, 6, fn. 9, affd. (3d Cir.1996) 74 F.3d 465.) Rather, `an actual, present controversy must be pleaded specifically' and `the facts of the respective claims concerning the [underlying] subject must be given.' (5 Witkin, Cal. Procedure, supra, § 819, p. 275; see City of Alturas v. Gloster (1940) 16 Cal.2d 46, 48, 104 P.2d 810.)" (City of Cotati v. Cashman (2002) 29 Cal.4th 69, 80, 124 Cal.Rptr.2d 519, 52 P.3d 695, orig. italics; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (2006) § 6:187, p. 6-53 (rev.# 1, 2006).)
The second amended complaint does not meet the specific pleading requirement imposed by City of Cotati. The second amended complaint identifies no specific controversy as to how Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 is presently or has in the past been applied to a single nonpublic, nonsectarian school. The only allegations are that: the hearing process is available only after the superintendent issues a suspension or revocation order; nonpublic, nonsectarian schools have in the past had their certifications suspended or revoked without prior notice and a hearing; the school is "adversely affected" by the department's practices; the school has had problems with the certification process in the past; the school is uncertain as to its rights if certification issues arise in the future; and the school's certification had been changed without prior notice and hearing in the past. These vague allegations do not meet the specific pleading requirements for a declaratory relief cause of action which seeks a declaration of rights in the as applied context. Rather, these nonspecific allegations amount to a facial challenge to Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 which, as has been noted, is without merit.
The only as applied issue of consequence involves suspensions. The second amended complaint alleges as follows: "Suspensions implemented by defendants . . . are *901 usually for a period of 30 days. Since a hearing decision is not required until 30 days after the request for a hearing, the hearing decision is not likely to be issued prior to the expiration of the suspension." This allegation, individually or in conjunction with the remainder of the second amended complaint, does not sufficiently specifically allege a due process violation to permit a declaratory relief claim to proceed. There are no specific allegations that in the past the suspension sanction has ever been applied in a fashion which denies due process when the Eldridge factors are applied. As noted, the Eldridge three-prong due process weighing analysis is controlling. The second amended complaint does not allege with the requisite specificity how the suspension sanction has ever been applied in the past so that the outcome of the Eldridge three-prong due process analysis would be any different. Of consequence to our analysis is the superintendent's suspension order that only prevents the nonpublic, nonsectarian school from accepting new students during the period the certification is suspended the institution may otherwise continue to operate. (Cal.Code of Regulations, tit. 5, § 3067, subd. (c)(3).)

C. The Suspension And Revocation Procedure Does Not Violate Government Code Section 11460.10 Et Seq.
Plaintiffs argue that Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 violate the requirements for emergency administrative action specified in Government Code Section 11460.10 et seq. Plaintiffs rely specifically on Government Code section 11460.20, subdivision (a) which states, "An agency may issue an emergency decision for temporary, interim relief under this article if the agency has adopted a regulation that provides that the agency may use the procedure provided in this article." Plaintiff argue the department has not promulgated emergency decision regulations that comply with Government Code section 11460.20, subdivision (b) which states: "(b) The regulation shall elaborate the application of the provisions of this article to an emergency decision by the agency, including all of the following: [¶] (1) Define the specific circumstances in which an emergency decision may be issued under this article. [¶] (2) State the nature of the temporary, interim relief that the agency may order. [¶] (3) Prescribe the procedures that will be available before and after issuance of an emergency decision under this article. The procedures may be more protective of the person to which the agency action is directed than those provided in this article." Education Code section 56366.6, subdivisions (a) and (b) and California Code of Regulations, title 5, section 3068 do not provide for the issuance of emergency decisions. Hence, the certification suspension and revocation procedures for nonpublic, nonsectarian schools are not subject to the requirements of Government Code section 11460.10 et seq. We need not address the parties' remaining contentions.

IV. DISPOSITION
The judgment of dismissal is affirmed. Defendants, the California Department of Education and Superintendent of Public Instruction Jack O'Connell, are to recover their costs incurred on appeal jointly and severally from plaintiffs, the California Association of Private Special Education Schools and the Poseidon School.
We concur: ARMSTRONG and KRIEGLER, JJ.
NOTES
[1] The federal due process clause in the Fourteenth Amendment states, ". . . [N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ." (U.S.Const., 14th Amend., § 1.)
[2] Article I, section 7, subdivision (a) of the California Constitution provides in part, "A person may not be deprived of life, liberty, or property without due process of law . . . ."