538 U. S. 1 (2003)
 CITY OF LOS ANGELES
v.
DAVID.
 No. 02-1212.
 Supreme Court of United States.
 Decided May 19, 2003.
 
 ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT.
 PER CURIAM.
 
 
 1
 On August 13, 1998, an officer of the city of Los Angeles Department of Transportation ordered respondent Edwin David's automobile towed from a spot where parking was forbidden. After paying $134.50, David recovered his car. David, believing that the trees obstructed his view of the "no parking" sign, requested a hearing to recover the money. On September 9, 1998—27 days after the vehicle was towed—the city held the hearing and denied David's claim.
 
 
 2
 David then brought this lawsuit in Federal District Court under Rev. Stat. § 1979, 42 U. S. C. § 1983, arguing that the city, in failing to provide a sufficiently prompt hearing, had violated his federal right to "due process of law." Amdt. 14, § 1. The District Court granted summary judgment for the city. The Court of Appeals for the Ninth Circuit, by a vote of 2 to 1, reversed, holding that the Constitution required the city to provide an earlier payment-recovery hearing, perhaps within 48 hours of the towing and at least within 5 days. 307 F. 3d 1143, 1147 (2002). The city, seeking certiorari here, argues that the Ninth Circuit's holding runs contrary to well-settled principles of constitutional law. We agree. We grant the writ and summarily reverse the Ninth Circuit's judgment.
 
 
 3
 In Mathews v. Eldridge, 424 U. S. 319, 335 (1976), the Court set forth three factors that normally determine whether an individual has received the "process" that the Constitution finds "due": "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
 
 
 4
 By weighing these concerns, courts can determine whether a State has met the "fundamental requirement of due process"—"the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Id., at 333.
 
 
 5
 In FDIC v. Mallen, 486 U. S. 230, 242 (1988), the Court considered circumstances in which "impairment of an individual's property is not preceded by any opportunity for a pre-deprivation hearing." A Government agency had suspended an indicted bank employee from his job. A statute required the agency to provide a postdeprivation hearing within 30 days and to issue a decision within 60 days of that hearing. The bank employee claimed that the 30- or 90-day delay between (a) the suspension and (b) the post-suspension hearing and decision violated the Due Process Clause. The Court recognized that there "is a point at which an unjustified delay in completing a postdeprivation proceeding `would become a constitutional violation.'" Ibid. It applied Eldridge-type factors to determine whether that point had been reached. 486 U. S., at 242 (assessing the importance of, and harm to, the private interest, the likelihood of interim error, and the governmental interest in a delay). And it concluded that a 30-day delay of the hearing, and a potential 90-day delay of a decision, did not violate the Constitution. Id., at 243.
 
 
 6
 Eldridge, as applied in Mallen, requires reversal of the Ninth Circuit's decision. The first Eldridge factor, the "private interest," is a monetary interest here. It consists of the private individual's interest in maintaining the use of money between (a) the time of paying the impoundment and towing fees and (b) the time of the hearing. The temporary deprivation of a job, the "private interest" at issue in Mallen, typically works a far more serious harm. Cf. Eldridge, supra, at 340 (distinguishing in this respect between benefits "not based upon financial need" and welfare assistance "given to persons on the very margin of subsistence"). So does a temporary deprivation of the use of the automobile itself—the relevant deprivation at issue in the lower court cases to which the Ninth Circuit looked for support. See Stypmann v. San Francisco, 557 F. 2d 1338, 1342-1344 (CA9 1977). Cf. Goichman v. Rheuban Motors, Inc., 682 F. 2d 1320, 1324 (CA9 1982). Indeed, the city indicates that any loss in the time value of the money can be compensated by an interest payment. Pet. for Cert. 7.
 
 
 7
 The second Eldridge factor—concern for accuracy—does not support the Ninth Circuit's conclusion. A 30-day delay in presenting evidence is unlikely to spawn significant factual errors. Administrative and judicial proceedings normally take place after considerably more time has elapsed. And the straightforward nature of the issue— whether the car was illegally parked—indicates that initial towing errors, while they may occur, are unlikely. Cf. Mallen, supra, at 244-245 (finding "little likelihood that the deprivation is without basis" in light of the grand jury indictment).
 
 
 8
 The third Eldridge factor—the "Government's interest" —argues strongly in the city's favor. The nature of the city's interest in delay is one of administrative necessity. The city points out that it "conducts more than a thousand vehicle impound hearings annually." Pet. for Cert. 8. It holds about five percent of these hearings—those involving individuals who are unable to afford the impoundment fees—within 48 hours. Ibid. It "takes time to organize hearings: there are only so many courtrooms and presiding officials; the city has to contact the towing officer and arrange for his appearance; the city may have to find a substitute to cover that officer's responsibilities while he attends the hearing." 307 F. 3d, at 1149 (Kozinski, J., dissenting). And the Ninth Circuit's holding, which presumably would require the city to schedule annually 1,000 or more hearings, instead of 50 hearings, within a 48-hour (or 5-day) time limit, will prove burdensome. The administrative resources available to modern police departments are not limitless. The administrative necessity supporting the delay here is no less substantial than the governmental interest in the 30-day hearing delay in Mallen, namely, the need to protect the integrity of the banking system and to prepare thoroughly for the hearing. Mallen, supra, at 244. We also add that the reason for denying a predeprivation hearing here—such a hearing is impossible if the city is to be able to enforce the parking rules—is not any less important than in Mallen.
 
 
 9
 We conclude that the 30-day delay in holding a hearing here reflects no more than a routine delay substantially required by administrative needs. Our cases make clear that the Due Process Clause does not prohibit an agency from imposing this kind of procedural delay when holding hearings to consider claims of the kind here at issue. The Ninth Circuit's judgment to the contrary is reversed.
 
 
 10
 
 It is so ordered.