Clyde BENTON and Travis Benton, Appellants,

v.

CITY OF HIGGINSVILLE, Respondent.

No. WD 64861.

Missouri Court of Appeals, Western District.

Nov. 8, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2005.

As Modified Dec. 20, 2005.

Application for Transfer Denied Jan. 31, 2006.

Larry Delano Coleman, Raytown, MO, for Appellant.

Lyle James Fuller, Kansas City, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Clyde and Travis Benton appeal the trial court's grant of summary judgment in favor of the City of Higginsville in their civil rights action under 42 U.S.C. § 1983 arising out of the seizure of a car. The City of Higginsville's summary judgment motion claimed that Travis Benton did not have a constitutionally protected privacy right in his property where the car was seized, and that Clyde Benton did not have a constitutionally protected interest in the car. The trial court granted the City's motion. We affirm.

## Factual Background

On November 12, 2001, the City of Higginsville received a citizen complaint regarding abandoned and junked vehicles located at the end of West 17th Street in Higginsville. Travis Benton, a plaintiff-appellant, owned the lot where some abandoned cars were located. Following receipt of the complaint, a City police officer contacted Travis, as owner of the lot, to explain the City's ordinance regulating the presence of abandoned and junked vehicles. The officer informed Travis that he would receive a certified letter notifying him that he would be required to move or dispose of the vehicles within thirty days. Travis received the letter two days later. At the end of the thirty days, Travis requested and received a three-week extension. At the end of that extension, he requested and received another three-week extension. After the second extension expired, the City ultimately, on January 28, 2002, towed a 1984 Pontiac from Travis' property.

The lot on which the Pontiac was located was not a residential lot. Instead, it was a partially fenced, vacant lot down the street from Travis' house. Prior to the car being towed (a period of ten weeks from time of the first notice), Travis never requested a hearing or any other judicial proceedings related to the car. Travis also never commented on the ownership of the car, or complained that the enforcement of the ordinance violated his rights. When the towing company towed the car on behalf of the City, the ownership of the car was checked, and it was found to have been last titled in the name of a Kansas resident.

Although it was unknown to the City at the time of the towing, and until this action was filed, Clyde Benton, Travis' brother and co-plaintiff in the action, claims an ownership interest in the car. The City had no notice of such claim of interest until suit was filed in September 2002, about ten months after the City first gave notice of intent to enforce the ordinance. Clyde acknowledges that he never contacted the City or towing company either before or after the car was towed and prior to filing suit.

During discovery, the City requested proof of Clyde's ownership of the Pontiac. Ultimately, Clyde produced a copy of a Kansas certificate of title issued to a Kansas resident. The reverse side of the title indicated that the title had been assigned to him in 1996 in consideration of $1.00. Clyde acknowledges that he never titled the car in his name, and never registered the car.

In April 2004, the City moved for summary judgment on the grounds that Travis did not have any expectation of privacy in the vacant lot and Clyde did not have a property interest in the car. Summary judgment was granted, with the trial court holding that the plaintiffs did not suffer any infringement of constitutionally protected interests. Travis and Clyde Benton now both appeal.

## Standard of Review

In determining whether the trial court's grant of summary judgment was appropri-

ate, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Our standard of review on an appeal of summary judgment is *de novo. Id.* An appellate court's criteria on appeal for determining whether summary judgment is proper are the same as those that should be used by the trial court in its initial summary judgment determination. *Id.* If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, we will not set it aside on review. *City of Washington v. Warren County,* 899 S.W.2d 863, 868 (Mo. banc 1995). "The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions." *Id.* Under Rule 74.04, a movant must establish his right to judgment as a matter of law. *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 688 (Mo.App. 1994). A movant who is a defendant may do so by showing facts that negate any one element of the plaintiff's claim. *Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 9 (Mo. banc 1995).

## Analysis

■ The first inquiry in any 42 U.S.C. § 1983 suit is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The rights that Travis and Clyde claim were violated were Travis' privacy right in his land and Clyde's property right in the car.

### Privacy Rights of Travis Benton

■ Plaintiff–Appellant Travis Benton claims that his right to privacy was violated when the City came onto his property to tow the 1984 Pontiac. The car, visible from the street, was located on a partially fenced, vacant lot. This lot did not contain a residence and was down the street from Travis' house. The seizure of automobiles in open spaces does not involve any invasion of privacy. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 351, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). The car was located in an open field and, as a result, the City did not invade Travis' right to privacy.

In *Schneider v. County of San Diego,* 28 F.3d 89 (9th Cir.1994), plaintiff Schneider owned a 1.4 acre lot. *Id.* at 90. He did not reside on the property but parked numerous vehicles in the open field. *Id.* He lived in a house about 240 feet from the lot. *Id.* After receiving complaints, the County found Schneider in violation of a zoning ordinance because the vehicles were a public nuisance. The County towed the vehicles. *Id.* at 90–91. The court, citing *G.M. Leasing Corp.,* found that the seizure of Schneider's vehicles did not impinge upon any legitimate privacy interest and was valid. *Schneider,* 28 F.3d at 92. The Eastern District of this court cited *Schneider* with approval in *Bezayiff v. City of St. Louis,* 963 S.W.2d 225 (Mo. App.1997), in which the court analyzed a city ordinance that authorized the towing of inoperable vehicles from private property.

*Schneider* closely corresponds to the facts in this case. Concluding that *Schneider* accurately states the law, we hold that Travis does not have a legitimate privacy interest in the land where the cars were seized; therefore, he does not have a legitimate right as a basis for a section 1983 claim. His claim fails. The trial court did not err in granting summary judgment as to Travis' claim.

### Property Rights of Clyde Benton

■ Clyde Benton claims that his property rights were violated when the 1984 Pontiac was towed from Travis' lot without due process or just compensation. There are two major problems with the assertion of Clyde's claim, and both relate to the fact that the City had no notice of Clyde's claim of ownership. One is that Clyde cannot show that additional procedures would have better protected his rights. The second is that, because the City had no notice of Clyde's claimed interest, Clyde's failure to avail himself of the opportunity to assert a claim with the City must bar his action under Section 1983.

Prior to service of papers in this suit, the City had no knowledge or notice of Clyde's interest in the car. Clyde had never titled nor registered the car, nor had he obtained a salvage title or paid property taxes on the car.[1]

To "determine whether an individual has received the 'process' that the Constitution finds 'due,'" the United States Supreme Court set forth three factors in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *City of Los Angeles v. David*, 538 U.S. 715, 716, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews*, 424 U.S. at 335, 96 S.Ct. 893).

To paraphrase *Mathews*, there may be a violation of due process where the procedures employed by governmental agents are so unreasonably careless or indifferent to individual rights that they create the likelihood of an erroneous deprivation of the private interest of a citizen. 424 U.S. at 335, 96 S.Ct. 893. One factor mentioned in *Mathews* is whether additional procedural protections would have been likely to better protect the rights in question.

In this case, in view of Clyde's failure to comply with procedures for declaring an ownership interest in the vehicle, and in view of Travis' failure to notify the City of Clyde's claimed interest, Clyde fails to articulate any way in which the City could have, regardless of the extent of procedural precautions it employed, protected against a seizure of Clyde's vehicle. Clyde never specifies what due process he claims is required. He suggests that a judicial hearing would be appropriate. However, we fail to see, and Clyde is unable to specify, exactly how the more extensive procedures would have protected Clyde. The City still would not have known of Clyde's interest, and could not have joined him to any proceedings. If Travis did not, after several communications with the City, inform the City of Clyde's interest, we see no reason to believe that additional procedures would have motivated Travis to do so.

Moreover, Clyde has the additional problem that he failed to notify the City of the existence of his interest. He was more interested in litigating his claim than in getting his car back. Section 1983 was enacted for the vindication of civil rights where there has been a true violation of a right. It does not exist so that citizens can

---

1. The trial court ruled, and the City urges on appeal, that Clyde had no standing to assert an interest in the vehicle because he never complied with titling and registration. Thus, he had no cognizable ownership in the vehicle, arguably. We need not specifically address the issue of his property interest in view of the ruling we reach herein.

find a reason to litigate and thereby to seek to recover attorney fees under section 1988. In *Goichman v. City of Aspen,* 859 F.2d 1466 (10th Cir.1988), the court upheld a summary judgment ruling for the City of Aspen by holding that the facts of that case did not give rise to a section 1983 claim. Goichman's car was towed because it was allegedly parked illegally. *Id.* at 1467. After realizing his car had been towed, Goichman went to the police station, paid the fine and towing fee, and recovered his car. He chose not to contest the parking violation. *Id.* If he had done so, and had prevailed at the hearing, his fees and charges would have been reimbursed. Eleven months later, Goichman brought an action under section 1983 claiming that he had not been provided with due process regarding the seizure and impoundment of his car. *Id.* The Court noted that Goichman was afforded an opportunity to be heard at the time he paid to recover his car, but he failed to assert any claim of right at that time. The court held he could not maintain an action under section 1983. If a claimant does not assert rights when he or she has the opportunity, there is no reason he or she should later be entitled to sue for denial of such rights. *See id.* at 1468–69.

Similarly, if Clyde did not assert his rights to the City after he became aware that the vehicle had been towed, there is no reason he should be entitled to sue upon his claim that he was denied the right to additional procedures. Clyde did not ask for the return of his car. Nor did he ask for compensation. He did not ask for any vindication of his alleged rights in any way. The City, in the meantime, had no notice of any claim of right he might have.

We have no way of knowing what remedial action the City might have undertaken

to accommodate Clyde if he had contacted the City and asked for the return of his car, through either an informal request or through any formal claims procedures the City might have. Clyde wants us to assume that the City would have been indifferent to his due process rights. Perhaps so, but on what basis do we assume that? The City should not have to defend a lawsuit when the claim could quite possibly have been resolved through a claims procedure. Consequently, for this reason also, we hold that the trial court did not err in granting summary judgment.[2]

## Remaining Points

The other points on appeal are mooted in view of the analysis above. We will affirm summary judgment grant if the ruling was legally correct, without regard to whether the moving party was in complete compliance with all aspects of Rule 74.04.

## Conclusion

Judgment granting summary judgment for the City of Higginsville affirmed.

LOWENSTEIN and HOWARD, JJ., concur.

## On Motion for Rehearing or Transfer

PER CURIAM.

█ In this motion, the appellants assert that this court overlooked the lack of constitutionality of the ordinance of the City of Higginsville. Appellants complain that this court "never sets forth the substance of that ordinance, neither does it analyze the ordinance."

The appellants are correct that this court did not address the constitutionality of the ordinance. The appellants did not directly attack the ordinance in this court. The appellants furnished this court with a

2. Clyde and Travis point to the fact that the trial court believed the ordinance was unconstitutional, although it ruled against them.

Because our rulings herein do not depend on whether the ordinance was constitutional, we also do not need to address that issue.

copy of the new ordinance, but did not furnish the court with a copy of the ordinance in effect at the time the vehicle was towed and under which the city purported to operate. Nor did the appellants argue the issue of constitutionality; the appellants assumed the former ordinance would be viewed as unconstitutional by this court because the circuit court had viewed the ordinance as unconstitutional, without relying upon that view in its ruling.

This court was accordingly unable to asses the constitutionality of the ordinance under which the car was towed. We are also unable to take judicial notice of the content of municipal ordinances. *Consumer Contract Co. v. Dept. of Revenue*, 592 S.W.2d 782, 785 (Mo. banc 1980). The fact that the circuit court, in dictum, viewed the ordinance as unconstitutional, (for reasons that were not specified), was not binding on this court. Ordinances are presumed constitutional until declared by a court *holding* to be otherwise. *Kansas City v. Liebi*, 252 S.W. 404, 407 (Mo. banc 1923).

Because the circuit court did not regard the constitutionality (or lack thereof) of the ordinance to be essential to its analysis, this court reviewed the trial court determination without having the text of the ordinance in question and without being provided substantive arguments as to the constitutionality of the ordinance. Accordingly, this court did not overlook a matter of law or fact as to the ordinance under which the towing was conducted.

Appellants also complained on appeal that the circuit court erred in stating that the City had sustained its affirmative defenses because the City did not plead affirmative defenses. It should be noted that, although the court referred to the City's "affirmative defenses," the matters asserted were not affirmative defenses. Summary judgment was granted because plaintiffs failed to show that they had a constitutionally protected privacy right or a constitutionally protected ownership interest that was violated by the City. The undisputed material facts showed that plaintiffs did not constitutionally protected interests. The issues submitted to the court related to the nature of the claims, and whether the appellants had cognizable claims under 42 U.S.C. section 1983. They were not matters of affirmative defense. Thus the trial court did not err in granting summary judgment. This court did not overlook any matters of law or fact in its opinion. The motion for rehearing or transfer is denied.