**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHEN YAGMAN,
*Plaintiff-Appellant*,

v.

ERIC GARCETTI, GILBERT
CEDILLO; PAUL KREKORIAN;
BOB BLUMENFIELD; TOM
LABONGE; PAUL KORETZ;
NURY MARTINEZ; FELIPE
FUENTES; BERNARD PARKS;
CURREN PRICE, JR.; HERB
WESSON, JR.; MIKE BONIN;
MITCHELL ENGLANDER;
MITCH O'FARRELL; JOSE
HUIZAR; JOE SUSCANIO;
GEORGE E. MOSS; GRACE
EUNKYUNG YOO; RON
CARPENTER; DAVID
MALCOME CARSON; JAIME
JESUS RODRIGUEZ;
STEPHANIE RODRIGUEZ;
DANA MATTHEW PERLMAN;
JANNY H. KIM; JOHN LY;
ERIC EISHENBERG; BRYAN
KANG; JAIME DE LA VEGA;
SELWYN HOLLINS; DETRICH
ALLEN; ROBERT ANDALON;
GRAG SAVELLI; JOHN FICKE;

No. 14-56223

D.C. No.
2:14-cv-02330-GHK-E

OPINION

SHARON LOUIS JACOBUCCI,
          *Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted November 9, 2016
Pasadena, California

Filed January 20, 2017

Before: Marsha S. Berzon and Jacqueline H. Nguyen,
Circuit Judges, and Jack Zouhary, District Judge.

Opinion by Judge Zouhary[*]

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's dismissal of an action brought pursuant to 42 U.S.C. § 1983 alleging that the procedure provided by the City of Los Angeles for contesting parking citations, as set forth in the California Vehicle Code, deprives contestants of property without due process.

The panel rejected plaintiff's contention that his right to procedural due process was violated because under the Code he was required to pay the citation penalty or prove an inability to pay before obtaining an administrative hearing. The panel held that plaintiff's modest interest in temporarily retaining the amount of a parking penalty was outweighed by the City's more substantial interests in discouraging dilatory challenges, promptly collecting penalties, and conserving scarce resources.

The panel held that plaintiff's substantive due process challenge failed because he did not allege conduct so egregious as to amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective. The panel also held that plaintiff failed to plead sufficient facts to state § 1983 claims for malicious prosecution, conspiracy, and *Monell* liability, and also failed to adequately plead facts establishing a RICO claim.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Finally, the panel held that the district court did not err by not granting leave to amend the complaint because amendment would have been futile.

---

**COUNSEL**

Stephen Yagman (argued), Yagman & Reichmann, Venice Beach, California, pro se Plaintiff-Appellant.

Gerald M. Sato (argued), Deputy City Attorney; Ronald S. Whitaker, Assistant City Attorney; Thomas H. Peters, Chief Assistant City Attorney; Michael N. Feuer, City Attorney; Office of the Los Angeles City Attorney, Los Angeles, California; for Defendants-Appellees.

---

**OPINION**

ZOUHARY, District Judge:

The primary issue in this appeal is whether the California Vehicle Code's procedure for contesting parking citations—as implemented by the City of Los Angeles—deprives contestants of property without due process. The district court answered no. We affirm.

I

Appellant Stephen Yagman alleges that he received and contested three parking citations from the City of Los Angeles ("the City"). While not mentioned in his Complaint or opposition to the City's motion to dismiss, the California Vehicle Code establishes the baseline procedure for

contesting those citations. *See* Cal. Veh. Code § 40215. The contestant must first request an initial review by the "issuing agency." *Id.* § 40215(a). If the initial review does not result in the citation's cancellation, the contestant may then request an administrative hearing within 21 days after the results of the initial review have been mailed. *Id.* § 40215(b). Should the challenger make such a request, the issuing agency must hold an administrative hearing within 90 days of the receipt of such request. *Id*. Before the hearing will be held, the contestant must either deposit the amount of the citation penalty or prove an inability to pay. *Id.* If still unsatisfied after the formal administrative hearing, the contestant may seek de novo review in the superior court. *Id.* § 40230.

In his threadbare Complaint, Yagman alleges that he asked for a "hearing" and, after his requests to waive the deposit requirement were denied, deposited the penalties and prevailed at two of the three formal administrative hearings. Yagman does not dispute that he underwent the initial review process and that he offered no proof of an inability to pay.

Yagman filed a putative class action against various city officials alleging Section 1983 claims for due process violations, malicious prosecution, conspiracy, and *Monell* liability, as well as a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. The district court dismissed Yagman's claims with prejudice. On appeal, Yagman argues he adequately pled facts supporting each of his claims and, in any event, the district court erred by not granting leave to amend.

## II

We review "de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)). A dismissal may be affirmed on any ground supported by the record. *Id.* And dismissal is appropriate where the plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 962–63 (quoting *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A district court's denial of leave to amend is reviewed for abuse of discretion. *Ebner*, 838 F.3d at 963. "In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III

Yagman first argues that the City's procedure for contesting parking citations violates procedural due process because it requires contestants to surrender property before holding a formal hearing. "Due process is a flexible concept that varies with the particular situation." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (internal quotations

omitted). "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010) (quoting *Brewster v. Bd. of Educ.*, 149 F.3d 971, 984 (9th Cir. 1998)). This principle does not always require a full evidentiary hearing or a formal hearing. *Id.*

The Supreme Court has held, however, that usually "the Constitution requires *some kind of . . . hearing* before the State deprives a person of liberty or property." *Shinault*, 782 F.3d at 1058 (emphasis added and altered) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)); *see also United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1162 (9th Cir. 2004) ("[T]he type of hearing required depends on the circumstances."). Thus, in "situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation . . . remedy to compensate for the taking." *Shinault*, 782 F.3d at 1058 (quoting *Zinermon*, 494 U.S. at 127).

The predeprivation hearing, which "need not be elaborate," "serves only as an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges are true and support the proposed action." *Brewster*, 149 F.3d at 985 (internal citations and quotation marks omitted). "To that end, a [due process] plaintiff need only be accorded oral or written notice of the charges against him, an explanation of the [adverse] evidence, and an opportunity to present his side of the story." *Id.* (internal citations and quotation marks omitted). Further, where "prompt postdeprivation review is

available for correction of administrative error, [due process] generally require[s] no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979).

Accordingly, there are no "hard and fast" rules for determining the requisite timing and adequacy of pre- and post-deprivation procedures. *See Brewster*, 149 F.3d at 984. Rather, once this court has concluded a protected interest is at stake, it must apply the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1979), to determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation." *Shinault*, 782 F.3d at 1057. The *Mathews* factors are: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id.* "By weighing these concerns, courts can determine whether a State has met the fundamental requirement of due process—the opportunity to be heard at a meaningful time and in a meaningful manner." *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (internal quotations omitted).

Yagman argues that the *Mathews* balancing test is inapplicable. He relies on the Supreme Court's observation in *United States v. James Daniel Good Real Property* that it "tolerates some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."

510 U.S. 43, 53 (1993) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). Yagman believes the parking-citation process at issue fails to qualify as "extraordinary" and that this failure must end the inquiry. But Yagman ignores *Good'*s application of *Mathews* in determining whether an exception to the general rule was warranted. *See Good*, 510 U.S. at 53 ("Whether the seizure of real property for purposes of civil forfeiture justifies such an exception requires an examination of the competing interests at stake, along with the promptness and adequacy of later proceedings. The three-part inquiry set forth in [*Mathews*] provides guidance in this regard.").

Moreover, Yagman mistakenly assumes the initial review does not satisfy *Good*'s "general rule requiring predeprivation notice and hearing." Properly framed, the issue is not whether predeprivation notice and a full, formal hearing are required; it is whether the City's procedures as a whole are constitutionally adequate under the circumstances—a determination that requires application of the *Mathews* test.

With respect to the first *Mathews* factor, the private interest at stake is relatively modest. Any erroneous deprivation based on the City's prehearing deposit requirement is temporary, as the deposit is refunded after a successful challenge. *See Mackey*, 443 U.S. at 12 ("The duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved."); Cal. Veh. Code § 42201.6 (requiring a refund of the deposit within 30 days of cancellation). Here, given the exception for individuals who cannot afford the deposit, the only private interest at stake for those subject to the deposit requirement is the temporary use of deposited funds during the period between a request for an administrative hearing and any

refund following resolution of that hearing—a period which cannot exceed 120 days under state law. *See David*, 538 U.S. at 717–718; *Love v. City of Monterey*, 43 Cal. Rptr. 2d 911, 923 (Cal. Ct. App. 1995). Yagman characterizes this private interest as the "lost time-value of money," but he does not allege the length of time between his payment of the penalty amounts and refund. According to the Complaint, the largest alleged penalty was \$73. Thus, the actual amount at stake was the interest accrued on \$73 over perhaps as little as a few days, and no more than a few months. In other words, a very modest sum over a short period of time—a few dollars at most. *See David*, 538 U.S. at 719 (2003) (holding that a 27-day delay between payment for vehicle towing and any refund was not a due process violation).

With respect to the second *Mathews* factor, the risk of erroneously depriving contestants of the deposited funds is relatively small. The initial-review process gave Yagman an opportunity to present evidence and arguments challenging his citations. That evidence would then be considered by the reviewer. *See Weiss v. City of Los Angeles*, 206 Cal. Rptr. 3d 213, 218 (2016) (summarizing the Los Angeles initial-review procedure). Nothing in the Complaint plausibly suggests the initial reviews were conducted unfairly. In fact, the state appellate court in *Weiss*—a case on which Yagman relies heavily on appeal—noted that the initial-review procedure was fair. 206 Cal. Rptr. 3d at 232 ("That the current initial review procedure is fair speaks well of the City and Xerox's intent in implementing and using it.").[1]

---

[1] Yagman also argues that the City's delegation of the initial review to a third-party processing agency in violation of the California Vehicle Code made the initial review a "legal nullity" that deprived him of due process. We decline to consider this argument because he failed to raise

Yagman argues that the initial review is "perfunctory, illusory, meaningless, and . . . [that it] results invariably in 75% of all cases in a deprivation of property." Even assuming he could support this argument with allegations to the same effect, that would not be enough to plausibly suggest a constitutional inadequacy. To the contrary, as the district court correctly noted, the fact that the initial review allegedly results in cancellation of a citation twenty-five percent of the time shows that it "catches many mistakes and protects against arbitrariness." The mere fact that the initial-review process failed to correct two of the three tickets he received, under identical circumstances, does not suggest a systemic failure of the process. The Due Process Clause does not require "that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey*, 443 U.S. at 13.

Finally, with respect to the third *Mathews* factor, the City's interests served by the deposit requirement are substantial. One such interest is in discouraging dilatory challenges. *See Love*, 43 Cal. Rptr. 2d at 925. Requiring the City to provide formal administrative hearings without collecting deposits would encourage contestants to request hearings simply to delay paying the penalties. The City has an interest in promptly collecting parking penalties. *See id.* at 924–25. Also, requiring a deposit before providing a formal hearing ensures the penalty will be collected following unsuccessful challenges. *See id.* at 924. By ensuring prompt payment for unsuccessful challenges, the City is spared the cost of further collection efforts. Lastly, the City has an interest in conserving "scarce administrative resources." *See*

it in opposing the motion to dismiss below. *See Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 998 (9th Cir. 2014).

*id.* at 925. By discouraging frivolous and dilatory challenges, the City avoids the need to schedule and staff unnecessary hearings.

Given the threadbare allegations in the Complaint and balancing the *Mathews* factors discussed above, this court concludes that the deposit requirement does not violate procedural due process. Given the moderate risk of erroneous deprivation, Yagman's modest interest in temporarily retaining the amount of a parking penalty is outweighed by the City's more substantial interests in discouraging dilatory challenges, promptly collecting penalties, and conserving scarce resources.

Importantly, under these circumstances, the initial review serves as an adequate "initial check against mistaken decisions." *Brewster*, 149 F.3d at 985 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985)). Given the availability of prompt post-deprivation review and correction, the initial review is "designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be," *Mackey*, 443 U.S. at 13, and so supports requiring payment of the deposit if the initial challenge does not succeed. Thus, Yagman cannot state a claim for violation of procedural due process based on the deposit requirement.

IV

In addition to his procedural due process challenge, Yagman argues the City's procedure violates substantive due process because it is fundamentally unfair. Not so. Fundamental rights are not implicated in this case. *See*

*Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012) ("[G]overnment action that 'affects only economic interests' does not implicate fundamental rights.") (quoting *Jackson Water Works, Inc. v. Pub. Utils. Comm'n*, 793 F.2d 1090, 1093 (9th Cir. 1986)).  Thus, to establish a substantive due process violation based on the City's procedures, Yagman must show the procedures are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."  *Id.* (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994)).  The City's procedures, however, are "presumed valid, and this presumption is overcome only by a clear showing of arbitrariness and irrationality."  *Id.* (quoting *Kawaoka*, 17 F.3d at 1234).  This is an "exceedingly high burden."  *Id.* (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008)).  Because Yagman has not alleged conduct so "egregious" as to "amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective," *id.* (quoting *Shanks*, 540 F.3d at 1088), his substantive due process challenge fails.

V

Yagman also argues he pled sufficient facts to state Section 1983 claims for malicious prosecution, conspiracy, and *Monell* liability.  But to establish a claim for malicious prosecution under Section 1983, Yagman "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Sacramento*, 68 F.3d 1180, 1189 (9th Cir. 1995)).  Yagman

alleges no facts  indicating his civil parking citations were issued with malice and without probable cause.

Moreover, Yagman's malicious prosecution, conspiracy, and *Monell* claims are each premised on a violation of Yagman's constitutional rights.  Because we hold that Yagman has not alleged a violation of his constitutional rights, he cannot maintain derivative constitutional claims based on that conduct.

## VI

Yagman next argues that he adequately pled facts establishing a RICO claim.  But the Complaint contains nothing more than the following conclusory allegations regarding the required RICO predicates: "The bad acts described in the matters enumerated herein above . . . evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and civil rights violations."

There is no RICO predicate based on allegations of unspecified "civil rights violations."  *See Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990).  And Yagman pled no facts on which this court could infer the City engaged in "fraud, mail fraud, wire fraud, or extortion."

## VII

Finally, Yagman argues the district court erred by not granting leave to amend his Complaint.  A district court ordinarily must grant leave to amend when it dismisses claims under Rule 12(b)(6).  But the district court need not grant leave if it "determines that the pleading could not

possibly be cured by the allegation of other facts." *Ebner*, 838 F.3d at 963 (quoting *Doe*, 58 F.3d at 497).

For the reasons discussed above, Yagman could not in good faith allege additional facts that would plausibly state a claim based on the City's citation-contest procedure. Leave to amend would have been futile. And for all those reasons, the dismissal of Yagman's claims with prejudice is affirmed.

**AFFIRMED.**