**Opinion filed August 8, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00084-CV

_____

## IN THE INTEREST OF D.K., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 11022-CX**

### O P I N I O N

This is an appeal from a final order in which the trial court terminated the parental rights of the mother and the father to their child, D.K.[1]  *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2023).  Both parents appealed.  We affirm the order of termination.

### I.  *Factual and Procedural Background*

The mother tested positive for THC and methamphetamine on March 8, 2023, when she gave birth to D.K.  D.K. also tested positive for methamphetamine and

---

[1]We refer to the parents as "the mother" and "the father," and to the child by her initials to protect the identities of the parties.  *See* TEX. R. APP. P. 9.8(b)(2).

spent the first two months of her life in the neonatal intensive care unit (NICU). The father left the hospital shortly after D.K. was born and did not return until nearly three weeks later. Investigator Karlye Kramer with the Department of Family and Protective Services (the Department) attempted to gather Appellants' identifying information, but neither was forthcoming or cooperative. Because Appellants refused to provide their names, dates of birth, and address, the Department sought temporary managing conservatorship of D.K. to ensure that she would have a safe home and environment upon her release from the hospital. On March 30, 2023, the Department filed an original petition for protection and conservatorship of D.K. and for the termination of Appellants' parental rights.

The final hearing occurred on March 12, 2024, a few days after D.K.'s first birthday. When the trial court asked for announcements, the father's attorney advised: "Your Honor, I have to announce not ready. [The father] informed me late yesterday afternoon that he did not have the funds or the means to make it here today. So, I'm announcing not ready." The trial court replied, "Okay," and directed the Department to present its first witness.

The evidence presented as to the father shows that his contact with the Department was "sporadic" and inconsistent. Benjamin Kimble, the permanency case supervisor, testified that the Department has "not heard from [the father] hardly at all." The father's whereabouts were unknown "throughout the majority of the case," the phone numbers he provided were typically inactive, and no residence has ever been confirmed for him. According to Kimble, the father said that "he was on the move so much that he'd just sleep in his car."

Although the father was incarcerated in Utah, Arkansas, and Abilene, Texas at various times throughout the pendency of this case, he had been released and placed on community supervision prior to the final hearing. Kimble testified that the father did not complete any of his service plan requirements, attend any of the

2

scheduled visits with D.K., or respond to any phone contact by the Department with regard to the visits. Kimble further testified that, while the father was incarcerated, "[h]e did not try to reach out to [the Department]" and "[t]he only contact that he had while he was incarcerated was [the Department] reaching out to him." Kimble confirmed that the father "never meaningfully engaged in services throughout the life of [the] case."

D.K. is currently residing in an adoptive foster home where her caregivers are addressing her medical concerns and meeting her needs. She continues to progress with specialized treatment and "various therapies," and is awaiting a formal evaluation to determine if she suffers from cerebral palsy.

The night before the final hearing, the father attempted to contact a case manager, which was the first call that she received from the father since January 2023. Although there is no request in the record for the father to appear at the final hearing electronically or by other means, the trial court explained in its closing remarks:

> I also note for the record that the Court denied the father's request to appear electronically. And while I understand terminating a parent's right is not something that is taken lightly . . . this has been a substance abuse case and it is very difficult for the Court to determine credibility of the parties when they're not physically present.

> The Court loses the ability to use all of its senses such as a sense of smell. For the record, the witness is -- the witness stand is attached directly to my left and is not uncommon for me to be able to smell things from witnesses on the bench.

> In addition, if a person appears through Zoom, I can't see anything below their neck or whatever it is that they show the Court. So, I'm not able to observe the -- you know, things such as sores on the body, the weight of the person, the color of their eyes, the whites of their eyes, if they're fidgeting. There's so much the Court loses in being able to observe through Zoom.

3

> Further, the . . . technology in my courtroom is very simplistic. The Court has basically one camera angle, and I have to manually move the camera if I want the camera to change, and I have no way to show evidence to the witness who's appearing by Zoom.
>
> In addition, there have been questions throughout this case about identity and who the people are.

At the conclusion of the hearing, the trial court terminated the mother's parental rights under Section 161.001(b)(1)(D), (E), (N), and (O), and terminated the father's parental rights under subsections (N) and (O). The trial court further found that termination of Appellants' parental rights is in the best interest of the child. This appeal followed.

## II. *Mother's Appeal*

The mother's court-appointed counsel has filed a motion to withdraw and a supporting brief in which he professionally and conscientiously examines the record and applicable law and concludes that the appeal presents no arguable issues and is therefore frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See In re Schulman*, 252 S.W.3d 403, 406–08 (Tex. Crim. App. 2008); *High v. State*, 573 S.W.2d 807, 812 (Tex. Crim. App. [Panel Op.] 1978).

Counsel has provided the mother with a copy of the brief, the motion to withdraw, a motion for access to the appellate record, and a letter explaining her right to review the record and file a pro se response to counsel's *Anders* brief. *See Kelly v. State*, 436 S.W.3d 313, 318–20 (Tex. Crim. App. 2014). The mother has not filed a response.

We conclude that the mother's appellate counsel has satisfied his duties under *Anders*, *Kelly*, and *Schulman*. Following the procedures outlined in *Anders* and

4

*Schulman*, we have independently reviewed the record in this case, and we agree that the mother's appeal is frivolous and without merit.

In light of the Texas Supreme Court's holding in *In re P.M.*, however, an *Anders* motion to withdraw "may be premature" if filed in the court of appeals under the circumstances presented in this case. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) ("[A]n *Anders* motion to withdraw brought in the court of appeals, in the absence of additional grounds for withdrawal, may be premature."). The court in *P.M.* held that, in parental termination cases, court-appointed counsel's duty to his or her client generally extends "through the exhaustion of [all] appeals." *Id.* at 27–28. In this regard, "appointed counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *Id.*

Accordingly, we deny counsel's motion to withdraw, and we affirm the trial court's order of termination as to the mother.

### III. *Father's Appeal*

In a single issue on appeal, the father contends that the trial court's denial of his "request" to appear at the final hearing by electronic means rather than in person resulted in the deprivation of his right to procedural due process. As we have said, there is no request in the record for the father to appear at the final hearing by electronic means.

### A. *Failure to Preserve Due Process Complaint*

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the relief sought and obtain a ruling. *See* TEX. R. APP. P. 33.1. Even constitutional complaints must be raised before the trial court to preserve them for appellate review. *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *see also In re E.R.G.*, No. 11-20-00248-CV, 2021 WL 1807332, at *1 (Tex. App.—Eastland May 6, 2021, no pet.)

5

(mem. op.) ("To the extent that Appellant's issue relates to due process, we hold that it was not preserved for review.").

In termination cases, "adhering to our preservation rules isn't a mere technical nicety; the interests at stake are too important to relax rules that serve a critical purpose." *L.M.I.*, 119 S.W.3d at 708. "[A]llowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved" to "ensure that children's lives are not kept in limbo while judicial processes crawl forward." *Id.* at 711; *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003).

The father was represented by counsel at the final hearing, who "sought no finding and raised no legal argument before the trial court about a constitutional [complaint]." *See L.M.I.*, 119 S.W.3d at 710–11. Although the father's trial counsel requested a continuance, "it was not apparent from the context that [the father] was attempting to raise a due process challenge." *Id.* at 711; *see also In re M.N.R.*, No. 04-22-00025-CV, 2022 WL 2230928, at *2–3 (Tex. App.—San Antonio June 22, 2022, no pet.) (mem. op.) (counsel for the mother did not "make the trial court aware of a constitutional complaint" based on the mother's absence); *E.R.G.*, 2021 WL 1807332, at *1; *In re S.R.*, No. 10-20-00281-CV, 2021 WL 824979, at *2 (Tex. App.—Waco Mar. 3, 2021, pet. denied) (mem. op.); *In re C.W.J.*, No. 11-17-00085-CV, 2019 WL 1067489, at *4 (Tex. App.—Eastland Mar. 7, 2019, no pet.) (mem. op.) (A constitutional challenge may be presented for the first time on appeal if the challenge presents a fundamental error alleging that an error only violates a party's constitutional rights is not enough.).

Because the father failed to make the trial court aware of his constitutional complaint, he presents nothing for our review.

B. *No Due Process Violation*

Even if the father had preserved his due process complaint for our review, he was afforded a meaningful opportunity to be heard. Consequently, he was not denied due process of law.

"One of the most fundamental liberty interests recognized is the interest of parents in the care, custody, and control of their children." *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "A parent may be denied the fundamental liberty interest in parenting only after they have been provided due process and due course of law." *Id.* at 235 (citing U.S. CONST. AMEND. XIV, § 1; TEX. CONST. art. I, § 19). "Due process at a minimum requires notice and an *opportunity* to be heard at a meaningful time and in a meaningful manner." *Tex. Workers' Comp. Comm'n v. Patient Advocs. of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004) (emphasis added) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The level of process that is due in any given situation is measured by a flexible standard that depends on the practical requirements of the circumstances. *Eldridge*, 424 U.S. at 334.

Whether the termination of parental rights without the parent being present at the final hearing amounts to a due process violation depends on the circumstances of each case. *See L.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-14-00793-CV, 2015 WL 3654631, at *6 n.47 (Tex. App.—Austin June 8, 2015, pet. denied) (mem. op.). For example, parents are entitled to notice of termination proceedings. *See* TEX. R. CIV. P. 21a; *In re K.M.L.*, 443 S.W.3d 101, 119 (Tex. 2014) ("Failure to give a parent notice of pending proceedings 'violates the most rudimentary demands of due process of law.'") (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)); *In re C.C.C.*, No. 11-23-00041-CV, 2023 WL 5280798, at *1 (Tex. App.—Eastland Aug. 17, 2023, no pet.) (mem. op.). Courts must also generally afford incarcerated parents the opportunity to appear in person or by other reasonable

7

means. *In re Z.L.T.*, 124 S.W.3d 163, 165–66 (Tex. 2003); *In re M.P.S.*, 632 S.W.3d 241, 243–44 (Tex. App.—Eastland 2021, no pet.) (the trial court erroneously denied the incarcerated mother's request for a "short continuance" to facilitate her participation in the hearing by phone).

Due process turns on the balance of three distinct factors: (1) the private interests affected by the proceeding; (2) the countervailing governmental interest supported by the use of the challenged procedure; and (3) the risk of erroneous deprivation of parental rights. *See Eldridge*, 424 U.S. at 335; *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *see also N.G.*, 577 S.W.3d at 236 (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)). Courts must weigh these factors to determine whether the fundamental requirements of due process have been met by affording one an opportunity to be heard at a meaningful time and in a meaningful manner based on the circumstances of the case. *See City of L.A. v. David*, 538 U.S. 715, 717 (2003). Once these *Eldridge* factors are weighed against each other, the court must "balance the net result against the presumption" that the procedure applied did not violate due process. *M.S.*, 115 S.W.3d at 547.

The father does not dispute that he was provided notice of the final hearing; instead, he asserts that the trial court should have afforded him the opportunity "to participate in the bench trial via Zoom due to transportation issues." The chosen procedure at issue—the trial court's refusal to permit the father to appear electronically rather than in person—is authorized by Rule 21d of the Texas Rules of Civil Procedure.[2] *See* TEX. R. CIV. P. 21d; FAM. § 105.003(a) (West 2019) ("proceedings shall be as in civil cases generally"). Rule 21d(b)(1) provides:

---

[2]The father does not acknowledge Rule 21d in his brief, and instead directs us to Taylor County Local Rule 4.4, which states: "All proceedings shall be conducted in-person unless the Court grants permission" to appear electronically. The remainder of this local rule, also overlooked in the father's argument, instructs that "[a] request to appear electronically shall be made by written motion filed along with a proposed order. . . . When possible, the request should be filed in sufficient time for a ruling before the hearing or trial." TAYLOR (TEX.) DIST. CT. & CNTY. CT. LOC. R. 4.4. Here, the father filed no such request.

> Unless the notice of court proceeding states otherwise, a person who participates in a court proceeding does so by physical presence in the courtroom. Upon appropriate notice by a party or the [trial] court, a court may allow or require a participant to appear at a court proceeding by videoconference, teleconference, or other available electronic means.

TEX. R. CIV. P. 21d(b)(1). If a party objects to "any method of appearance," it must do so "within a reasonable time after the party receives notice of the appearance," and "stat[e] good cause for the objection." *Id.* R. 21d(d). Factors for the trial court to consider in determining good cause include the nature of the case and the type of court proceeding, the complexity of the issues, the evidence to be submitted, "technological restrictions such as lack of access to or proficiency in necessary technology," and "travel restrictions such as lack of transportation." *Id.* R. 21d(e).

In weighing the *Eldridge* factors against the application of this rule, we presume that it comports with constitutional due process requirements. *See M.S.*, 115 S.W.3d at 547.

### 1. *Private Interest Affected*

"[A] parent's interest in maintaining custody of and raising his or her child is paramount." *Id.* The parent's fundamental liberty interest in maintaining custody and control of his or her child weighs in favor of permitting the parent to appear by alternative means. But "[t]he child bears a substantial interest in the proceedings as well." *M.S.*, 115 S.W.3d at 547; *see* FAM. § 153.002 ("The best interest of the child shall always be the primary consideration of the court."). And both the parent and child have an "interest in a just and accurate decision." *M.S.*, 115 S.W.3d at 547–48.

The trial court, as the factfinder regarding the child's best interest, must assess the parents' and other witnesses' credibility and demeanor in pursuit of a just and accurate decision. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). In evaluating

whether a parent is credible, safe, and sober, the trial court may sense "the 'forces, powers, and influences'" that are not apparent through virtual testimony. *See Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Similarly, the parent's and child's interests "in the accuracy and justice of the decision to permanently end [the parent-child] relationship" heavily favors "providing [the parent] with an opportunity to participate in the proceedings and communicate with his attorney during trial." *See In re L.N.C.*, 573 S.W.3d 309, 322 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

In this circumstance, the father was in fact afforded the opportunity to appear in person at the final hearing, which, as illustrated above, is the method of appearance that would lead to the most reliable, accurate result. It is not unreasonable for trial courts to require the parents' physical presence at the final hearing or other proceeding prior to relinquishing a child to their care, rather than heeding a parent's request to appear electronically "at the eleventh hour." *See In re J.G.*, No. 02-24-00022-CV, 2024 WL 2971693, at *5–6 (Tex. App.—Fort Worth June 13, 2024, no pet. h.) (mem. op.) (holding "that a parent does not have an absolute right to appear remotely in a termination case"). Consequently, this first factor is, at least, neutral.

### 2. *Countervailing Government Interest*

The State's fundamental interest in parental termination cases is to protect the best interest of the child. *M.S.*, 115 S.W.3d at 548. This interest is aligned with the child's interest in a final termination decision so that the placement or adoption of the child to a stable home and environment, or the return of the child to the parent(s), is not unduly prolonged. *Id.*

The State's interest in protecting the best interest of the child is "served by procedures that promote an accurate determination of whether the natural parents

can and will provide a normal home [and environment for the child].” *Id.* at 548–49 (quoting *Santosky*, 455 U.S. at 767); *see also In re B.L.D.*, 113 S.W.3d at 353 (noting that the State’s “*parens patriae* interest in promoting the welfare of the child” aligns with the parent’s interest in a just and accurate decision). As set forth above, a parent’s physical presence at the final termination hearing promotes an accurate determination of whether that parent can provide a safe and stable home and environment for the child.

Additionally, the circumstances of this case demonstrate the critical importance of the father’s in-person appearance at the final hearing—to confirm his identity and address, determine whether he was under the influence of illegal substances, and otherwise assess whether he was or is a potential danger to his infant child in any other manner. The law recognizes the factfinder’s unique position to observe and sense the credibility and demeanor of witnesses. *See A.B.*, 437 S.W.3d at 503; *Meekins v. State*, 340 S.W.3d 454, 461 n.32 (Tex. Crim. App. 2011) (“Determinations of witness credibility are left entirely to the fact finder, who is in the unique position to observe the witness’ body language, demeanor, tone of voice, and other indicia of credibility.”). Thus, instructing parents to physically appear at the final termination hearing facilitates the trial court’s assessment of significant details and nonverbal cues, thereby ensuring the accuracy of its important and ultimate decision.

Moreover, a parent’s ability, desire, and motivation to attend court settings, visit with their child, and comply with other required services, are considerations for the trial court in its best interest determination. *See In re A.J.D.-J.*, 667 S.W.3d 813, 834 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (“When a parent consciously decides to be present in his or her child’s life on a sporadic basis only and solely when it suits the parent to do so, or engages in a course of unjustifiable conduct that inevitably results in his or her absence, this behavior in and of itself jeopardizes the

child's emotional wellbeing."); *see also In re J.M.T.*, 519 S.W.3d 258, 269–70 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). And while courts may permit the parties to appear by electronic means, the trial court clearly articulated why doing so in this case would hinder its ability to accurately assess the father's capability and fitness to adequately parent D.K. Therefore, the second *Eldridge* factor weighs in favor that the father was afforded due process of law. *See In re A.S.M.*, 650 S.W.3d 85, 93 (Tex. App.—El Paso 2021, no pet.) (The trial court did not deny the father procedural due process, as the father was provided notice of the final hearing, appeared through counsel, and was given an opportunity to be heard.).

### 3. *Risk of Erroneous Deprivation*

"Termination of [one's] parental rights is traumatic, permanent, and irrevocable." *M.S.*, 115 S.W.3d at 549. "For this reason, any significant risk of erroneous deprivation is unacceptable." *Id.* As discussed, the father was provided adequate notice of the final hearing setting, and an opportunity to appear in-person at the hearing. The father's intentional absence and his trial counsel's inability to confer with him regarding strategic decisions was, according to the father, the result of "transportation issues."

However, a purported lack of available transportation is not analogous to incarceration, nor is it a legal justification for a parent's absence from court proceedings or the failure to comply with court orders. *See, e.g., D.D. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00772-CV, 2023 WL 3102599, at *3–4, *11–12 (Tex. App.—Austin Apr. 27, 2023, pet. denied) (mem. op.) (the trial court determined that the appellant failed to prioritize her children's needs and disregarded her excuse of transportation issues); *In re A.S.*, No. 02-19-00429-CV, 2020

12

WL 2071944, at *2–3 (Tex. App.—Fort Worth Apr. 30, 2020, pet. denied) (mem. op.) (the parent's excuses for failing to complete required services included the lack of transportation and claiming that he was a victim of his circumstances); *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.) (the trial court could consider "that appellant neglected her son's medical treatment," even though the appellant claimed it was due to "lack of transportation"). Here, the father did not give the Department sufficient notice, or make any request, that it arrange transportation for him, and nothing in the record indicates that public transportation was unavailable to him. *Cf. J.G. v. Tex. Dep't of Family & Protective Servs.*, 592 S.W.3d 515, 521–22 (Tex. App.—Austin 2019, no pet.) (The inmate father "provided no factual information demonstrating why his personal appearance via alternate means was necessary in addition to his counsel having appeared for him in the trial court."). Rather, the father's failure to physically appear at the final hearing is consistent with his apathetic behavior throughout the duration of his daughter's short life. *See A.J.D.-J.*, 667 S.W.3d at 823.

We are cognizant of a parent's "commanding" liberty interest in maintaining custody of and raising his or her child, in addition to the interest in the accuracy and justice of a termination decision. *See M.S.*, 115 S.W.3d at 547. However, the evidence overwhelmingly shows that the father had been unconcerned and uninterested in the welfare of his child since her birth. He left the hospital after an argument with the mother, completed none of his service plan requirements, failed to maintain consistent contact with the Department, and did not attend a single visit with his daughter after her removal. *See A.J.D.-J.*, 667 S.W.3d at 823. Based on this record, there was minimal risk of erroneously terminating the father's parental rights to D.K. without his virtual presence at the final hearing. *See In re C.K.H.*, No. 01-22-00603-CV, 2023 WL 2026550, at *9–11 (Tex. App.—Houston [1st Dist.]

Feb. 15, 2023, pet. denied) (mem. op.); *cf. In re S.F.M.*, No. 01-21-00334-CV, 2021 WL 5773867, at \*9–11 (Tex. App.—Houston [1st Dist.] Dec. 7, 2021, pet. denied) (mem. op.) (based on the evidence, denying the incarcerated father's motions for continuance and recess requests, which resulted in his inability to participate, if error, was harmless).

We conclude, to the extent that it is necessary, after weighing the *Eldridge* factors, that the trial court did not violate the father's right to procedural due process. Accordingly, we overrule the father's sole issue.

IV.  <em>This Court's Ruling</em>

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


August 8, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.