**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| DIAMOND S.J. ENTERPRISE, INC., DBA S. J. Live, | No. 20-15085 |
| *Plaintiff-Appellant*, | D.C. No. 5:18-cv-01353-LHK |
| v. |  |
| CITY OF SAN JOSE, | OPINION |
| *Defendant-Appellee*. |  |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted May 14, 2021
Submission Vacated April 25, 2022
Resubmitted August 28, 2023
San Francisco, California

Filed April 30, 2024

Before: Jacqueline H. Nguyen and Daniel P. Collins, Circuit Judges, and Timothy M. Burgess,[*] District Judge.

---

[*] The Honorable Timothy M. Burgess, Chief United States District Judge for the District of Alaska, sitting by designation.

Opinion by Judge Nguyen;
Dissent by Judge Collins

## SUMMARY[**]

### First Amendment/Prior Restraint

The panel affirmed the district court's dismissal of plaintiff Diamond S.J. Enterprise's claims, and its summary judgment for the City of San Jose, in Diamond's action alleging First Amendment and due process violations when the City suspended Diamond's license to operate a nightclub for thirty days following a shooting outside the club.

After holding an administrative hearing, the City found Diamond operated its venue in a manner that caused the shooting and created a public nuisance in violation of San Jose Municipal Code (SJMC) Chapter 6.60's entertainment business licensing provisions.  Diamond filed a complaint in federal court, asserting: (1) a First Amendment facial challenge raising theories of prior restraint, overbreadth and vagueness to SJMC Chapter 6.60's Nuisance Provisions, specifically §§ 6.60.290, 6.60.370(L), and 6.60.383(F), which preclude public entertainment businesses from operating in a way that causes a public nuisance; and (2) a due process claim, in connection with the administrative hearing.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that Diamond had standing to bring a First Amendment facial challenge to the suspension, revocation, and renewal procedures in the Nuisance Provisions.

The panel held that Diamond's facial attack on the Nuisance Provisions as prior restraints failed because the Provisions' definition of "public nuisance" does not give City officials unbridled discretion that creates a risk of censorship. The City's public entertainment business licensing scheme properly constrains official discretion by incorporating narrow, objective, and definite public nuisance statutes into the scheme. Moreover, the challenged provisions require the Chief of Police to state all grounds upon which a denial, suspension, or revocation of a license is based and provide for an administrative hearing and both administrative and judicial review. Because the panel rejected Diamond's facial attack on the Nuisance Provisions as prior restraints, it also rejected the overbreadth and vagueness challenges.

The panel held that Diamond failed to state a procedural due process claim. The licensing scheme provided Diamond with notice, an opportunity to be heard, the ability to present and respond to evidence, and a pre-deprivation appeal, followed by post-deprivation review by the California Superior Court. In any event, any procedural error was harmless as none of the alleged deficiencies affected the outcome of the proceedings.

Dissenting, Judge Collins disagreed with the majority's conclusion that the district court properly rejected, as a matter of law, Diamond's facial challenges to the City's licensing scheme. The nuisance standard underlying §§ 6.60.290 and 6.60.370(L) is too amorphous to adequately

cabin official permitting discretion in the First Amendment context. Judge Collins would reverse the district court's grant of summary judgment rejecting the challenges to §§ 6.60.290, 6.60.370(L), and 6.60.383(F), and would remand with instructions (1) to hold §§ 6.60.290 and 6.60.370(L) facially invalid, but only insofar as they permit a revocation or suspension of an entertainment permit based on a nuisance theory; and (2) to further consider Diamond's challenges to § 6.60.383(F). Judge Collins would vacate the judgment with respect to Diamond's constitutional challenge to SJMC Chapter 6.62, which governs licensing for event promoters, and would remand with instructions to dismiss those claims for lack of Article III standing. He would affirm the dismissal of the due process claim to the extent that it is based on an allegedly biased decisionmaker, but would reverse the district court's dismissal, on the pleadings, of Diamond's claim that the City arbitrarily withheld material evidence from Diamond in violation of due process.

---

## COUNSEL

D. Gill Sperlein (argued), The Law Office of D. Gill Sperlein, San Francisco, California, for Plaintiff-Appellant.

Malgorzata Laskowska (argued) and Kathryn J. Zoglin, Senior Deputy City Attorneys; Ardell Johnson, Assistant City Attorney; Nora Frimann, City Attorney; San Jose City Attorney's Office, San Jose, California, for Defendant-Appellee.

Niles Illich and Scott H. Palmer, Palmer Perlstein, Addison, Texas, for Amicus Curiae First Amendment Lawyers Association.

**OPINION**

NGUYEN, Circuit Judge:

Diamond S.J. Enterprise, Inc. ("Diamond"), operates SJ Live, a nightclub in downtown San Jose, California ("City"). On the night of May 27, 2017, Jenny Wolfes, the nightclub's owner, cancelled a live show shortly before it was scheduled to start because the show's promoter had taken payments for table reservations without her knowledge. Concerned that some of the club's tables had been double-booked, Wolfes closed the doors on a large crowd waiting outside to enter. After leaving the club, the show's promoter fired multiple shots into the crowd.

A City ordinance empowers the Chief of Police to deny, revoke, or suspend the license of a public entertainment business that serves alcohol and hosts events with more than 100 guests if the business operates in a way that causes a "public nuisance." Following the incident, the City held an administrative hearing and suspended Diamond's license for thirty days, finding that Diamond operated its venue in a manner that caused the shooting and created a public nuisance. Diamond's thirty-day suspension went into effect after the suspension was affirmed on administrative appeal.

Diamond facially challenged the public entertainment business nuisance provisions of the City ordinance in district court, arguing that they operate as prior restraints and are overbroad and vague. Diamond also challenged the procedural adequacy of the administrative hearing. The district court dismissed Diamond's claims and granted summary judgment in favor of the City, holding that the challenged provisions did not implicate First Amendment

rights and the City satisfied due process requirements.  We agree.

Diamond's facial attack fails because the challenged provisions do not give City officials unbridled discretion that creates a risk of censorship.  The City's public entertainment business licensing scheme properly constrains official discretion by incorporating narrow, objective, and definite public nuisance statutes into the scheme.  Similarly, Diamond fails to state a due process claim.  The licensing scheme provided Diamond with notice, an opportunity to be heard, the ability to present and respond to evidence, and a pre-deprivation appeal, followed by post-deprivation review by the California Superior Court.  In any event, none of the alleged deficiencies affected the outcome of the proceedings. We therefore affirm the district court's rulings.[1]

I

Diamond operates SJ Live, sometimes referred to as Studio 8.  The nightclub is owned and managed by Wolfes, a shareholder and the Chief Executive Officer of Diamond. SJ Live's patrons who wish to reserve tables can do so; they agree to buy alcohol without paying in advance, a practice referred to as "table service" or "bottle service."

On the night of May 27, 2017, SJ Live had scheduled a live show through Daniel Embay, an event promoter.  Before the show, however, Wolfes discovered that Embay had collected money from guests and booked advanced table service reservations without permission.  As a result, the club's table reservations were overbooked.  Wolfes discovered the problem as patrons arrived for the show.  She

---

[1] We GRANT the First Amendment Lawyer Association's motion for leave to file an amicus brief.  ECF No. 22.

immediately terminated Diamond's relationship with Embay, cancelled the event, and asked Embay to leave. Wolfes closed the club's doors, resulting in a large crowd gathered outside. Some patrons who had pre-booked tables became angry and tried to storm the front door. When Wolfes asked Embay to leave, he threatened her, exited the club's back door, went to his car, and got a gun. He fired several shots into the crowd gathered in a shared parking lot behind the club and eventually fled in his car.

In July 2017, the City's Chief of Police issued a notice of intention to revoke Diamond's entertainment permit, alleging several violations of San Jose Municipal Code ("SJMC") Chapter 6.60, including that Diamond had created a public nuisance. The notice was followed by an administrative hearing where Diamond had an opportunity to be heard, present evidence, and respond to the City's evidence. The hearing officer found that Diamond operated its venue in a manner that created the shooting incident outside the club, which the officer deemed a public nuisance. Specifically, the hearing officer relied on the fact that Diamond contracted with a promoter who fired multiple shots into a crowd that had gathered outside after patrons were denied entry to the cancelled event. The hearing officer also concluded that Diamond's security outside the premises that evening was inadequate. The hearing officer reduced the sanction from revocation to a thirty-day suspension. Pursuant to SJMC Section 6.60.520, the decision would not become final if Diamond filed a timely appeal.

Diamond sought review of the order at the City's Appeals Hearing Board, which upheld the decision as supported by substantial evidence. The California Superior Court for Santa Clara County reached the same conclusion and denied Diamond's petition for a writ of administrative

mandamus and request to stay enforcement of the suspension.

Diamond then filed a complaint in federal court, asserting: (1) facial challenges to the ordinance for violating the First Amendment under theories of prior restraint, overbreadth, and vagueness; and (2) a due process claim, in connection with the administrative hearing. The district court dismissed the prior restraint theory and the due process cause of action for failure to state a claim, and subsequently denied Diamond's request for leave to amend and for reconsideration. The parties filed cross-motions for summary judgment, and the district court granted the City's motion on Diamond's remaining First Amendment theories of overbreadth and vagueness and entered judgment for the City. Diamond timely appealed.

Diamond argues that the public entertainment business licensing provisions of the SJMC are facially unconstitutional. Specifically, Diamond challenges three provisions within SJMC Chapter 6.60 that preclude public entertainment businesses from operating in a way that causes a public nuisance. *See* SJMC §§ 6.60.290, 6.60.370(L), 6.60.383(F) (collectively, the "Nuisance Provisions").[2] Diamond further argues that it was deprived of procedural

---

[2] We need not address Diamond's argument that SJMC Chapter 6.62, which governs licensing for event promoters, is unconstitutional. Diamond did not properly plead it in the Second Amended Complaint ("SAC"), and the district court did not abuse its discretion in striking from the SAC the only paragraph—paragraph 55—that arguably related to this claim. The district court had previously instructed Diamond to identify with specificity the subsections relevant to its claims, and Diamond failed to do so. Moreover, Diamond did not contest the order striking paragraph 55 in its motion for reconsideration of the order partially granting the City's motion to dismiss.

due process at its license suspension hearing because the hearing officer was biased and because it could not obtain copies of video surveillance before or during the hearing.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016). We also review de novo a district court's grant of summary judgment. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017).

## III

## A

## 1

We reject the City's contention that Diamond lacks standing to bring a First Amendment facial challenge to the suspension, revocation, and renewal procedures in the Nuisance Provisions. A plaintiff has standing to vindicate First Amendment rights through a facial challenge when it "argue[s] that an ordinance . . . impermissibly restricts a protected activity." *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006) (citation omitted). Because Diamond alleges that the Nuisance Provisions target entertainment businesses and vest unbridled discretion in government officials to limit First Amendment activity, Diamond may proceed "without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988).

Diamond, however, lacks standing to challenge the initial licensing provision. *See* SJMC § 6.60.370(L). Diamond obtained a public entertainment license before this lawsuit, so it cannot satisfy the injury-in-fact requirement unless it plans to apply for another license in the future. *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007) (finding the plaintiff failed to satisfy the injury-in-fact requirement to challenge an initial licensing scheme when it did not demonstrate intent to apply for another permit). Diamond's vague allegation that it intends to apply for permits in the future is too speculative to meet the standing requirements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions— without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

## 2

Diamond contends that the Nuisance Provisions are facially invalid as prior restraints. There is no dispute that music and entertainment fall within the protection of the First Amendment. *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) (holding that music is protected expression); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 567 (9th Cir. 1984) (holding that live entertainment is protected expression). The narrow question here is whether the challenged provisions operate as unlawful prior restraints on those protected activities. We conclude they do not.

Although facial challenges are disfavored, *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1134 (9th Cir. 2004), licensing schemes may be facially unconstitutional if they have a close enough nexus to expression and place

"unbridled discretion in the hands of a government official or agency," *Plain Dealer*, 486 U.S. at 755–57, 759; *see also Epona v. County. of Ventura*, 876 F.3d 1214, 1221 (9th Cir. 2017) (holding that a facial prior restraint challenge is cognizable "to the extent that the scheme g[i]ve[s] permitting officials unbridled discretion to grant or revoke permits" (citing *Kaahumanu v. Hawaii*, 682 F.3d 789, 802 (9th Cir. 2012))). We need not decide whether the City's licensing scheme has a nexus to expression. Even assuming it does, Diamond's facial challenge nevertheless fails because the Nuisance Provisions do not confer unbridled discretion on any City official.

To survive a facial challenge, a licensing scheme must provide "narrowly drawn, reasonable and definite standards" for granting, revoking, or suspending a license. *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 324 (2002) (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992)); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (noting that "standardless discretionary power" may result in "virtually unreviewable prior restraints"). Otherwise, the decisionmaker could, "in a calculated manner, censor certain viewpoints." *Plain Dealer*, 486 U.S. at 764.

Here, Diamond's facial challenge fails because the Nuisance Provisions do not confer unbridled discretion on the City's Chief of Police. While the application of some of these provisions certainly requires some exercise of discretion, that discretion is properly limited. Diamond primarily takes issue with the provisions' definitions of "public nuisance," arguing that the definitions contain the same broad language that prior cases have found boundless. The first and second provisions define public nuisance by specific reference to the definitions of public nuisance in SJMC Section 1.13.050 and California Civil Code §§ 3479

and 3480.**³**  SJMC §§ 6.60.290, 6.60.370(L) (citing SJMC § 1.13.050; Cal. Civ. Code §§ 3479, 3480).  Each of these definitions has appropriate limits.

Under California Civil Code § 3479, a nuisance is:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

California Civil Code § 3480 clarifies that a public nuisance, as opposed to a private nuisance, is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."  The California Supreme Court found that these definitions follow a well-defined objective test.  *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 605 (Cal. 1997) ("[T]he standard is an objective one.").  They do not allow the City to declare a public nuisance for any level of interference, as

---

³ The third provision requires the business to be subject to an administrative or judicial nuisance finding.  SJMC § 6.60.383(F).  This renewal provision does not incorporate § 1.13.050 or §§ 3479 and 3480, but instead goes a step farther: it applies only *after* a public entertainment business has been subject to an administrative or judicial public nuisance finding, which limits the Chief of Police's discretion even more.

Diamond contends, or to find a public nuisance based on subjective criteria.  "[N]ot every interference with collective social interests constitutes a public nuisance. . . . [T]he interference must be both *substantial* and *unreasonable*" from the perspective of an objectively reasonable person.  *Id.* at 604.  In other words, the risk of abuse by a Chief of Police who may find something subjectively "indecent or offensive to the senses" is cabined by the additional requirement that it be both objectively unreasonable and substantial.

This case is distinguishable from *Plain Dealer*.  There, the Supreme Court found that a provision allowing a mayor to deny newspaper rack permits "for reasons related to the health, safety, or welfare" conferred unbridled discretion by failing to include neutral criteria or any limits "made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."  *Plain Dealer*, 486 U.S. at 769–70; *cf. Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1192 (9th Cir. 2022) (rejecting a permitting scheme that allowed denial where the use would "adversely affect surrounding property" as "general, flimsy, and ephemeral").

In contrast, here, judicial construction of California Civil Code §§ 3480 and 3479 imposes clear limits on their definition of a public nuisance—that it be both objectively unreasonable and substantial.  *See Acuna*, 929 P.2d at 605; *see also Thomas*, 534 U.S. at 324 (holding that a regulatory scheme wherein permits could be denied "when the intended use would present an unreasonable danger to the health or safety of park users or Park District employees" was "reasonably specific and objective").

The Nuisance Provisions also incorporate the public nuisance definition from the City's administrative abatement

scheme.   This definition, similarly, engenders no facial concerns.   Section 1.13.050 defines a public nuisance to include "[t]he maintenance or use of property in the city in a manner that jeopardizes or endangers the health, safety or welfare of persons on the premises or in the surrounding area."  SJMC § 1.13.050(A)(1).  Critically, City officials are expressly prohibited from using this definition to limit constitutionally protected activity.  *Id.* § 1.13.050(B).  This directly constrains officials from using nuisance abatement to curb First Amendment rights.  *Cf. Plain Dealer*, 486 U.S. at 769–70 (finding only illusory limits on a mayor's discretionary power to deny permits where no constraints were explicitly contained in the law).

Moreover, the challenged provisions require the Chief of Police to state all grounds upon which a denial, suspension, or revocation is based and provide for an administrative hearing and both administrative and judicial review.  SJMC §§ 6.60.500, 6.60.510, 6.60.520, 6.60.530.   This scheme contrasts with the loose and standardless regulations ruled unconstitutional in past cases. *See, e.g.*, *Forsyth County*, 505 U.S. at 133 (holding an ordinance lacked narrowly drawn reasonable and definite standards because charges were left to the "whim" of the administrator, who did not have to rely on any objective factors or provide an explanation, and whose decision was unreviewable); *Spirit of Aloha*, 49 F.4th at 1192 (striking down a permitting scheme that allowed "a limitless range of subjective factors" and did not require the regulator to provide any explanation for the denial); *Kaahumanu*, 682 F.3d at 807 (finding an ordinance conferred unbridled discretion because authorities could revoke a permit "at any[ ]time" for "any reason" and in their "sole and absolute discretion"); *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996)

(finding unbridled discretion where ordinance provided "no limits" on officials' authority to deny a permit and where officials could "deny a permit without offering any evidence to support [their] conclusion").

Because the Nuisance Provisions are narrow, objective, and definite enough to constrain discretionary authority, any abuse in practice must be challenged as applied. *Thomas*, 534 U.S. at 324–25.  Thus, Diamond's facial attack fails.[4]

B

We next address Diamond's contention that the Nuisance Provisions are unconstitutionally overbroad and vague.  A law may be invalidated as overbroad if a "substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted).  If a statute "at its margins" infringes on protected expression, facial invalidation is typically inappropriate. *Osborne v. Ohio*, 495 U.S. 103, 112 (1990).  The doctrine of vagueness often overlaps with substantial overbreadth and is a "logically related and similar doctrine." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983).  Because we reject Diamond's facial attack on the Nuisance Provisions as prior restraints, we also reject the overbreadth and vagueness challenges.  *See Kaahumanu*, 682 F.3d at 802 ("To the degree that we reject Plaintiffs' facial attack on the regulation, we also reject their overbreadth challenge.").

---

[4] Because we affirm the district court on the merits, we do not reach the City's argument that Diamond's First Amendment claim is barred by res judicata.

C

Finally, Diamond alleges that it was deprived of procedural due process at its license suspension hearing because it could not access video evidence before or during the hearing and because the hearing officer was biased.  The district court applied the *Mathews v. Eldridge* balancing test to Diamond's allegations and dismissed the claim pursuant to Rule 12(b)(6) without leave to amend.**5**  424 U.S. 319 (1976).

To evaluate a procedural due process claim, we weigh the *Mathews* factors: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citing *Mathews*, 424 U.S. at 335) (citation omitted).  Assuming Diamond's private interest in its license is significant, we conclude that the second *Mathews* prong—the risk of erroneous deprivation— is determinative.

Diamond's principal objection is that it could not obtain copies of video evidence before or during the hearing.  The City had declined Diamond's request to access the videos because Embay was under criminal investigation.  The City's refusal, while unfortunate, does not rise to the level of a constitutional violation in this case.  The Due Process

---

5 We do not address Diamond's contention that the City lost its opportunity to move to dismiss the third cause of action when it failed to challenge it in the first motion to dismiss, because Diamond failed to raise this argument below.  *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) (stating that generally the court does not consider arguments raised for the first time on appeal).

Clause "does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979).  In weighing the risk of erroneous deprivation, *Mathews*, 424 U.S. at 335, the record shows that Diamond was able to vigorously object to the officers' statements about the videos, and there is no indication that the hearing officer viewed the video outside of the hearing or considered evidence beyond that presented.  Moreover, Diamond's license was not immediately suspended.  Instead, Diamond availed itself of an additional layer of pre-deprivation review at the Appeals Hearing Board.  *See* SJMC § 6.60.520(C) (the hearing officer's decision is not final if an appeal is timely filed).  The suspension did not go into effect until after that decision.  The procedures employed here therefore significantly limited the risk of erroneous deprivation.[6]  Thus, the inability to access video evidence alone does not demonstrate a violation of the constitutional guarantee of adequate pre-deprivation procedures.[7]

---

[6] As to the third *Mathews* prong, we agree with the district court's assessment that the City's interest in preserving the peace is substantial, and additional procedural requirements here would be unduly burdensome.

[7] And, further, Diamond received adequate post-deprivation review. Diamond obtained independent judicial review by the California Superior Court, pursuant to a writ of administrative mandamus. Diamond does not allege any bias in this process.  We have held that "[a California] petition for a writ of administrative mandamus provides 'an adequate opportunity for de novo judicial review.'" *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1154–55 (9th Cir. 2018) (citation omitted).  Here, the Superior Court applied the substantial evidence standard but also observed its ruling would have been the same even under de novo review.

Even if the City's failure to provide Diamond access to the videos constituted procedural error, we find that error harmless. *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treas.*, 686 F.3d 965, 988–89 (9th Cir. 2012) (affirming dismissal of due process claims where the court was "confident that [the errors] would not have changed [the decisionmaker's] ultimate . . . determination"). The hearing officer suspended Diamond's license for thirty days, citing "undisputed evidence" that Embay was the shooter and concluding Diamond was responsible for the shooting because it had contracted with Embay. The hearing officer had copious evidence, outside of the videos, identifying Embay as the shooter. Most damningly, "a search warrant of Mr. Embay's address recovered a gun and ammunition matching the casings found at the scene of the shooting," and "the recovered bullets were silver, matching the slugs also found at the scene." Indeed, the police report reviewed by the hearing officer names Embay as the shooter, and prosecutors had already criminally charged Embay for the shooting. Additionally, the hearing officer knew that (1) a manager at the nightclub told police that "the male that was shooting was the promoter for the evening," and Wolfes's testimony confirmed that Embay was the promoter for the night of the shooting; (2) another witness told police "that the person shooting was named 'Dan,'" Embay's first name; and (3) another promoter "received several phone calls speculating that Mr. Embay was the shooter."

Moreover, Diamond never explains how viewing the video tapes might have affected the outcome of the hearing. Diamond had the police report, which describes the videos' contents in detail, prior to the hearing. Diamond contends that, had it been able to review the video evidence, it could have established a better timeline of events. But the exact

timeline does not alter the basic facts drawn from the video tapes and described in the police report—a man retrieved a gun from a vehicle rented to Embay, returned to the crowd, fired several shots, and drove away in the car.

Diamond also alleges structural bias because the hearing officer was tasked with reviewing a revocation decision issued by his supervisor.  But Diamond fails to demonstrate that its allegations fit within either of the "two main categories" of due process challenges based on structural bias that we have previously identified—where a decisionmaker has a "direct, personal, substantial pecuniary interest" in the proceedings, or where the decisionmaker, because of his institutional responsibilities, would have "so strong a motive" to rule in a way that would aid the institution. *Alpha Epsilon Phi Tau Chapter Housing Ass'n v. City of Berkeley*, 114 F.3d 840, 844 (9th Cir. 1997). Indeed, Diamond ignores the fact that the purportedly biased officer *rejected* most of his supervisor's findings and recommended a substantially lower punishment, from revocation to a thirty-day suspension.  Diamond's allegations of bias are purely speculative and do not establish a due process violation.

The presence of notice and an opportunity to be heard, the ability to present and respond to evidence, and the availability of pre- and post-deprivation appeal procedures together greatly reduced the risk of erroneous decision-making in this case.  And any procedural error was harmless.

Accordingly, Diamond cannot plausibly allege it was deprived of process.[8]

**AFFIRMED.**

---

COLLINS, Circuit Judge, dissenting:

The majority affirms the district court's judgment rejecting all of the constitutional claims asserted by Plaintiff Diamond S.J. Enterprise, Inc. ("Diamond") against the City of San Jose ("City") concerning the City's public-entertainment-permitting regime. Because I think that the district court erred in rejecting several of Diamond's claims, I respectfully dissent.

**I**

I disagree with the majority's conclusion that the district court properly rejected, as a matter of law, Diamond's facial challenges to San Jose Municipal Code §§ 6.60.290, 6.60.370(L), and 6.60.383(F).[1]

---

[8] The district court reasonably exercised its discretion in denying leave to amend because amendment could not have remedied these deficiencies. *Wilson*, 835 F.3d at 1090.

[1] I agree with the majority that Diamond has Article III standing to challenge these provisions only insofar as they govern the suspension, revocation, or renewal of a public entertainment permit. *See* Opin., Section III(A)(1). Although the record shows that Diamond's CEO—Jenny Wolfes—"intend[s] to open other live entertainment venues in the City of San Jose in the future" and applied for an entertainment permit for a new nightclub in 2019, Wolfes is not a party to this case, and her actions, without more, do not establish that *Diamond* intends to apply for additional public entertainment permits. Moreover, although Diamond

## A

The three challenged provisions are as follows:

> The permittee shall not conduct the permitted business in a manner that creates or results in a public nuisance, as defined in Section 1.13.050 of this code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty (150) feet of the permitted premises.

SAN JOSE MUN. CODE § 6.60.290.

> An application for an entertainment permit or entertainment license shall be denied, and an entertainment permit or entertainment license issued pursuant to this title may be suspended or revoked by the chief of police upon any of the following grounds: . . .
>
> > (L) The applicant, licensee or permittee has conducted the public entertainment business, in a manner that creates or results in a public nuisance, as defined

---

thus lacks standing to challenge the provisions specifically governing *initial* issuance of a permit, its standing to challenge the suspension, revocation, or renewal provisions provides a sufficient basis, under our precedent, for it to assert a facial challenge based on a prior restraint theory. *See Kaahumanu v. Hawaii*, 682 F.3d 789, 802 (9th Cir. 2012) (holding that a facial challenge may be brought, under a prior restraint theory, against regulations conferring "discretion to grant *and revoke* permits" (emphasis added)); *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759–60 (1988) (stating that "a multiple or periodic licensing requirement is sufficiently threatening to invite judicial concern" and does not bar a facial challenge).

> in Section 1.13.050 of this code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty feet of the premises.

*Id*. § 6.60.370.

> An application to renew an entertainment permit or entertainment license shall be denied by the chief of police upon any of the following grounds: . . .
>
> (F) The premises or the public entertainment business has been the subject of an administrative, civil or criminal nuisance abatement action and court judgment or administrative determination finding the premises or the public entertainment business to be a nuisance within the past five years.

*Id*. § 6.60.383.

## B

As the majority states, "licensing schemes may be facially unconstitutional if [1] they have a close enough nexus to expression and [2] place 'unbridled discretion in the hands of a government official or agency.'" *See* Opin. at 10–11 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988)).  Both elements are satisfied here, at least to the extent that §§ 6.60.290 and 6.60.370 permit suspension or revocation based on a "nuisance" theory.

**1**

First, the City's licensing scheme plainly has a sufficient nexus to expression.

In *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180 (9th Cir. 2022), we held that a law that explicitly and selectively "regulates the use of properties for expressive conduct" has a sufficient nexus to expression to permit a plaintiff to assert a First Amendment facial challenge. *Id*. at 1190. As we explained, "[f]or a facial prior restraint challenge, it matters less that the scheme is meant to be generally unrelated to speech than that it *specifically targets*, rather than simply happens to affect, expression protected by the First Amendment." *Id*. at 1191 (emphasis added). On their face, the permit-related nuisance provisions challenged here apply *only* to holders of an "entertainment permit," meaning a business that provides or allows live entertainment, has a capacity of more than 100 persons, and sells alcohol. *See* SAN JOSE MUN. CODE § 6.60.030(A). Live entertainment undoubtedly constitutes protected speech under the First Amendment, *see Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 567 (9th Cir. 1984), and so the application of the challenged provisions depends explicitly upon whether a business engages in speech. That is sufficient to establish the requisite nexus to expression under *Spirit of Aloha*.

The City's contrary arguments are unavailing. The City points to the fact that, before a business allowing "live entertainment" will be required to obtain an "entertainment permit," other elements must also be satisfied—*viz.*, that alcohol must be sold and the capacity must be more than 100 persons. But that does not eliminate the nexus to expression

that arises simply from having a permitting regime that, by its plain terms, applies selectively based on whether the business engages in a First Amendment activity.

The City also notes that its "prohibition of public nuisance . . . applies generally, not just to businesses that need public entertainment permits, or to event promoters." But that does not alleviate the selectivity at issue here either. The City does *not* require in-advance permitting systems for all of its businesses, but rather only for a defined list of several dozen. *See* SAN JOSE MUN. CODE chs. 6.08–6.90. There is a critical difference between being generally subject to nuisance law and being selectively subject to nuisance law *as part of a permitting scheme*. That is, a special nuisance-based permitting system of live entertainment (with four-year renewals and two-year reviews, and all enforced administratively by the police) is more onerous than a generally applicable nuisance law. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (plurality) (rejecting contention that a city's "'general' inspection scheme" precluded a facial challenge to an additional inspection scheme explicitly and selectively applicable to "sexually oriented businesses," because the challenged scheme was "more onerous with respect to sexually oriented businesses than with respect to the vast majority of other businesses"); *cf. Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (holding that enforcement of a generally applicable law prohibiting use of premises for prostitution or lewd behavior against a bookstore did not implicate the First Amendment). Indeed, the very fact that the City relies on such a special permitting regime to enforce nuisance law against a First Amendment activity—rather than rely on generally applicable nuisance law enforced in the courts—confirms

that the City itself thinks that reliance on general nuisance law is not equivalent to its special regime.

**2**

Second, under *Spirit of Aloha*, the nuisance standard underlying §§ 6.60.290 and 6.60.370(L) is too amorphous to adequately cabin official permitting discretion in the First Amendment context.

In *Spirit of Aloha*, we drew a distinction between (1) a permitting system that allows a permit to be denied based on adverse effects on neighboring property that are tied to "an objective factor like 'safety'" (which we stated would be sufficient); and (2) a system that relies on more amorphously defined adverse effects, such as "impair[ing] the utility of neighboring property or uses" or having detrimental effects on "the public interest, health, safety, convenience, or welfare" (which we held was inadequate). 49 F.4th at 1192 (citations omitted). The challenged provisions here fall on the latter side of that line. By incorporating or relying upon the nuisance standard in California Civil Code § 3479, the relevant provisions of §§ 6.60.290 and 6.60.370(L) would allow a permit to be suspended or revoked based on conduct that is "indecent" or is "offensive to the senses." CAL CIV. CODE § 3479. Because these value-laden and loosely defined terms are not anchored to any objective factor, they impermissibly "allow[] unbridled discretion." *Spirit of Aloha*, 49 F.4th at 1192.

In reaching a contrary conclusion, the majority relies on the California Supreme Court's statement that the nuisance standard provided in § 3479 "is an objective one." *See* Opin. at 12 (quoting *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 605 (Cal. 1997)). But that comment merely refers to the fact that the substantive standard—whatever it is—must be

judged from the perspective of "reasonable persons" rather than particular neighbors.  *Acuna*, 929 P.2d at 605 (citation omitted).  That does not resolve the problem here, which is that the range of considerations that could count as "indecent" or "offensive to the senses" is too amorphously defined to adequately channel discretion in the First Amendment permitting context.

In *Acuna*, the state high court held that this "indecent or offensive to the senses" standard was satisfied based on the defendant gang members' "drinking, consumption of illegal drugs, loud talk, loud music, vulgarity, profanity, brutality, fistfights and gunfire."  929 P.2d at 615.  While that totality-of-the-circumstances judgment is eminently reasonable, it does not do very much to articulate the relevant limits of the underlying substantive standard.  Could a permit be denied, based on conduct that is "indecent or offensive to the senses," if (for example) a venue books events involving drinking, loud talk, loud music, vulgarity, and profanity?  Neither the majority nor the City points to anything in the relevant state or local law that would preclude such an outcome.  Although the majority notes that the San Jose Municipal Code contains a general statement that nothing in the code chapter concerning nuisance abatement "shall prohibit persons from participating in activity which the city may not proscribe under the United States Constitution or the California Constitution," SAN JOSE MUN. CODE § 1.13.050(B), that generic and high-level instruction to obey the Constitution can hardly be said to provide sufficient guidance to constrain the permitting discretion of City officials.

In the absence of any more specific guidance to limit the scope of this broadly framed definition of "nuisance," with its reliance on conduct that is "indecent or offensive to the

senses," the challenged provisions of the San Jose permitting scheme confer unbridled discretion on City officials and are inadequate in the First Amendment permitting context. *See Spirit of Aloha*, 49 F.4th at 1192; *see also Association of Cmty. Orgs. for Reform Now v. Municipality of Golden, Colo.*, 744 F.2d 739, 748 (10th Cir. 1984) (holding that city council had impermissible, unbridled discretion under ordinance that forbade door-to-door solicitation unless exemption was granted upon finding by the council "that such activity is for a 'charitable, religious, patriotic or philanthropic purpose or otherwise provides a service or product so necessary for the general welfare of the residents of the city that such activity does not constitute a nuisance'"); *cf. Near v. Minnesota*, 283 U.S. 697, 720 (1931) ("Characterizing the publication as a business, and the business as a nuisance, does not permit an invasion of the constitutional immunity against restraint.").

## C

Diamond's challenge to § 6.60.383(F) presents a somewhat different issue, because its literal language suggests that it applies only if the permit-renewal applicant has been the subject of an administrative or judicial "nuisance" finding within the five previous years. The majority contends that, because the existence of such a historical finding is an objective fact, this consideration sufficiently cabins discretion and weighs in favor of rejecting a facial challenge under *Lakewood* and *Spirit of Aloha*. *See* Opin. at 12 n.3. For several reasons, however, I would not reach this issue.

First, the literal language of § 6.60.383(F) also suggests that if (as here), there was such a finding, then non-renewal is *mandatory*. However, neither party here has suggested

that Diamond's permit renewal will automatically be denied, which underscores that this provision may be interpreted by the City as conferring a degree of discretion that is not immediately apparent from its text.  Second, the district court rejected all constitutional challenges to these three provisions on the ground that they lacked a sufficient nexus to expressive conduct to implicate the First Amendment, and it likewise did not reach any such specific issues concerning the proper construction of § 6.60.383(F).  The district court's ruling was wrong for the reasons I have discussed above in section I(B)(1), and I would go no further in addressing Diamond's constitutional challenges concerning § 6.60.383(F).  As to that provision, I would simply reverse the grant of summary judgment to the City and would remand to the district court for further consideration of those challenges.

## II

Diamond also asserted a constitutional challenge to Chapter 6.62 of the San Jose Municipal Code, which governs licensing for event promoters.  However, Diamond mis-cited the applicable provision, referencing § 6.62.410, rather than § 6.62.400, in paragraph 55 of its operative complaint.  The district court dismissed Diamond's claim based on that technicality, and the majority agrees.  *See* Opin. at 8 n.2.  I would not reach whether that ruling is correct but would instead vacate the district court's judgment on this score and remand with instructions to dismiss those claims for lack of standing.

Diamond challenges only one aspect of Chapter 6.62 on the merits, *viz*., the provisions of § 6.62.400 that describe the applicable *procedures* for processing permits and licenses for event promoters.  Diamond thus does not challenge the

underlying requirement that, in using an event promoter, Diamond must either use a licensed promoter *or* have a written contract with the promoter.  Diamond, however, has failed to establish standing to challenge the adequacy of the procedures governing the processing of event-promoter license applications.  Diamond made no showing that it, or anyone whose services it wishes to use, planned to file a promoter application.  Moreover, Diamond could readily use the promoter of its choice simply by using a written contract containing the basic elements required by § 6.62.210—as Diamond has done many times.  Given these points, it is not clear how Diamond can satisfy either the injury-in-fact or redressability elements of Article III standing.  *See Lujan v. Defenders of Wildlife, Inc.*, 504 U.S. 555, 560–61 (1992).

## III

Diamond further contends that, in two respects, the City violated its procedural due process rights in the administrative suspension proceedings that were conducted against it.

First, Diamond argues that the hearing officer was biased, because he was, in effect, reviewing the decision of his superior.  As to this issue, I agree with the majority that this theory fails because the California superior court—whose impartiality is unchallenged—explicitly held that, even if it applied de novo review to the administrative record rather than substantial-evidence review, it would still reject Diamond's claims.  *See* Opin. at 17 n.7.

Second, Diamond asserts that it was unfairly deprived of access to video evidence before or during the hearing.  In my view, the district court erred in rejecting this claim at the pleadings stage.  The district court held that the operative complaint "contradicts itself with regard to whether video

evidence was presented at the hearing," because the complaint alleged both that (1) the City presented police officers to testify as to the video contents instead of presenting the video; and (2) the City "relied on video evidence."   In so concluding, the district court clearly violated the settled rule that the allegations of the complaint must be read in the light most favorable to the plaintiff. Viewed in context, the complaint's various allegations can— and should—be read to say that the "video evidence" was only presented *through the oral testimony of officers about what the video showed*.  Thus, the officers were allowed to describe the contents of videos that were not provided to Diamond.   Moreover, based on the allegations of the complaint, the City's grounds for denying access to the videos were insubstantial: the fact that there was a pending criminal investigation into the shooting does not justify withholding evidence from a civil proceeding while simultaneously cherry-picking that same evidence and presenting it in a filtered format, and that is doubly true given that some of the withheld video evidence had originated *from Diamond itself*.  The majority's rejection of this claim rests on factual speculation that is wholly inappropriate in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

*        *        *

For the foregoing reasons, I would reverse the district court's grant of summary judgment rejecting the challenges to §§ 6.60.290, 6.60.370(L), and 6.60.383(F), and I would remand with instructions (1) to hold §§ 6.60.290 and 6.60.370(L) facially invalid, but only insofar as they permit a revocation or suspension of an entertainment permit based on a nuisance theory; and (2) to further consider Diamond's challenges to § 6.60.383(F).  I would vacate the judgment

with respect to Diamond's challenge to Chapter 6.62, and I would remand with instructions to dismiss those claims for lack of Article III standing.  I would affirm the dismissal of the due process claim to the extent that it is based on an allegedly biased decisionmaker, but I would reverse the district court's dismissal, on the pleadings, of Diamond's claim that the City arbitrarily withheld material evidence from Diamond in violation of due process.  To the extent that the majority concludes otherwise, I respectfully dissent.